362 So.2d 414 (1978)
U.S. FIRE INSURANCE COMPANY, Appellant,
v.
PROGRESSIVE CASUALTY INSURANCE COMPANY and Phillip Hurlock, Appellees.
No. 78-196.
District Court of Appeal of Florida, Second District.
August 25, 1978.
William A. Donovan of Pomeroy & Napier, Naples, for appellant.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees.
SCHEB, Acting Chief Judge.
Appellant/plaintiff U.S. Fire sued appellees/defendants Hurlock and his insurer Progressive, seeking contribution on the ground that Hurlock was comparatively *415 negligent in an automobile accident which involved U.S. Fire's insured, David Cooksley. The trial court awarded a summary final judgment in favor of Hurlock and Progressive. This appeal by U.S. Fire ensued.
Only one issue need be addressed. Was there a genuine issue of material fact which under Fla.R.Civ.P. 1.510 precluded entry of a summary final judgment in an action for contribution on the theory of comparative negligence? We think there was. We reverse.
The depositions before the court revealed that around 11:00 p.m. on May 20, 1974, David Cooksley was driving his Volkswagen south through Naples on U.S. 41, a four-lane highway divided by a median. He was accompanied by Edwardo Llorca, and they were headed toward Llorca's house. As they approached the intersection at 22nd Avenue where they intended to turn left, the traffic light was green.[1] Cooksley slowed his vehicle, entered the left-turn lane, and then proceeded to turn left into 22nd Avenue.
At the same time Phillip Hurlock was traveling north on U.S. 41 in his Pontiac Firebird. As Hurlock approached the 22nd-Avenue intersection he also had a green light. Just as he entered the intersection Cooksley's car crossed in front of him. Hurlock applied his brakes, but was unable to avoid colliding with the right rear of Cooksley's Volkswagen. Llorca sustained injuries to his leg which eventually required surgery.
Llorca brought suit against Cooksley and Hurlock and their respective insurers. Cooksley's insurer, appellant U.S. Fire, negotiated a $15,000 settlement with Llorca which released the two drivers and their insurers. Following the settlement, U.S. Fire sued appellees Hurlock and Progressive seeking contribution on basis of Hurlock's comparative negligence. Hurlock and Progressive moved for summary judgment, contending the pleadings and depositions on file showed that Cooksley's negligence was the sole proximate cause of the accident. After a hearing the trial court granted the motion for summary judgment.
U.S Fire urges there remained a factual issue as to whether Hurlock had kept a proper lookout as he entered the intersection. Hurlock and Progressive counter that they were entitled to a judgment as a matter of law because Hurlock had the right to assume that Cooksley would obey the traffic laws, and he therefore had no duty to anticipate that Cooksley would not yield the right-of-way as he was required to by statute.[2]
It is true that a motorist entering an intersection with a favorable traffic signal has the right to assume that others will obey the law and yield the right-of-way to him. Kerr v. Caraway, 78 So.2d 571 (Fla. 1955); MacNeill v. Neal, 253 So.2d 263 (Fla. 2d DCA 1971); Wagner v. Willis, 208 So.2d 673 (Fla. 2d DCA 1968). However, it is equally true that a motorist who proceeds into an intersection must also use reasonable care. As we said in MacNeill v. Neal, supra, at 264:
A motorist about to enter an intersection with the traffic signal in his favor has the right of way. He also has a right to assume others will obey the law and exercise due care to avoid an accident. However, even though he has a favorable light he must exercise reasonable care to determine that there is no impending traffic which would impede safe passage through the intersection. He has not exercised reasonable care once he knows or should have known that another motorist is going to run a red light and has a clear opportunity to avoid the collision. (Emphasis supplied, citations omitted.)
See also Mason v. Remick, 107 So.2d 38, 39 (Fla. 2d DCA 1958); Tackett v. Hartack, 98 So.2d 896 (Fla. 3d DCA 1957).
*416 Hurlock, in his deposition, said that as he approached the 22nd-Avenue intersection he saw a police car stopped at the red light to his left, so he checked his speedometer to make sure he was going under the speed limit of 45 m.p.h. Hurlock said he was looking straight ahead as he entered the intersection, but that Cooksley's car "just seemed to appear out of nowhere" and that he did not see it until it was a "car length" from his own vehicle. He immediately applied his brakes but claimed he could not avoid the impact.
Cooksley said in his deposition that he made the left turn into 22nd Avenue at 15 or 20 m.p.h. with his left turn signal on. He said he did not see Hurlock's Pontiac until it was approximately three car lengths away, and by then it was too late to avoid the collision.
Llorca said in his deposition that both he and Cooksley noticed the policeman as they approached the intersection, and that, in fact, Cooksley had expressed concern that the officer might stop him. Llorca said he could not understand this, as Cooksley was not violating any traffic laws at the time. Llorca had seen Hurlock's Pontiac approaching the intersection as Cooksley began his left turn, but thought Cooksley could make the turn. When it became obvious to him that Cooksley could not, Llorca told him to "step on it." Unfortunately it was too late to avoid the collision. Llorca further stated that Hurlock's car did not seem to slow down before the collision, nor did he remember hearing brakes squeal or a horn blow. However, he did remember seeing skid marks after the accident which he estimated to be some thirty feet in length.
Patrolman Paul Harris, the driver of the police car that was stopped at the red light, was also deposed. The officer said that after Cooksley began his left turn that "all of a sudden" Cooksley slowed down "almost to a pause," and that Hurlock then slammed on his brakes.
Since Holl v. Talcott, 191 So.2d 40 (Fla. 1966), appellate courts have closely scrutinized whether a movant has satisfactorily met the burden of conclusively showing the absence of any genuine issue of material fact. Moody v. Seaboard Coastline RR., 287 So.2d 707 (Fla. 2d DCA 1974); Fletcher Co. v. Melroe Mfg. Co., 261 So.2d 191 (Fla. 1st DCA 1972). And, of course, all facts and inferences are to be resolved against the party seeking a summary judgment and in favor of the party opposing it. Stringfellow v. State Farm Fire & Casualty Co., 295 So.2d 686 (Fla. 2d DCA 1974); Goodman v. Anthony, 269 So.2d 756 (Fla. 3d DCA 1972); Lescrynski v. Middlebrook, 260 So.2d 215 (Fla. 4th DCA 1972). Justice Sundberg, speaking for the majority in Wills v. Sears, Roebuck & Co., 351 So.2d 29, 30 (Fla. 1977), recently commented upon the movant's burden:
A party moving for summary judgment must meet a twofold requirement:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits [in support or opposition, or both], if any, show [1] that there is no genuine issue as to any material fact and [2] that the moving party is entitled to a judgment as a matter of law. Fla.R. Civ.P. 1.510(c).
In order to carry its burden as to the first of these requirements, the movant must show conclusively the absence of any genuine issue of material fact, Visingardi v. Tirone [193 So.2d 601 (Fla. 1966)]; Holl v. Talcott, supra. The Holl court additionally stated that the burden on parties moving for summary judgment is greater than the burden which the plaintiff must carry at trial, because the movant must prove a negative  the nonexistence of a genuine issue of material fact. Id., at 43.
Historically courts have been especially cautious where summary judgments have been entered in negligence cases. As Justice Sundberg went on to say in Wills, supra, at 30:
Movant's burden is even more onerous in negligence actions where summary judgment procedures historically have been employed with special care. Holl v. Talcott, supra; Stephens v. Moody, 225 So.2d 586 *417 (Fla. 1st DCA 1969); Maury v. City Stores, Inc., 214 So.2d 776 (Fla. 3d DCA 1968); Suhr v. Dade County, 198 So.2d 837 (Fla. 3d DCA 1967). The necessity for exercise of such caution is emphasized by virtue of this Court's adoption of comparative negligence, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), and its recent abolition of assumption of risk as an absolute defense, Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). Unless a movant can show unequivocally that there was no negligence, or that plaintiff's negligence was the sole proximate cause of the injury, courts will not be disposed to granting a summary judgment in his favor.
As can be seen from the above quote, the introduction of the doctrine of comparative negligence into our law in 1973 has accentuated the degree of caution with which a trial court must view a motion for summary judgment.
In the case before us we do not feel that Hurlock and his insurer Progressive conclusively showed that Hurlock exercised reasonable care in approaching the 22nd-Avenue intersection. The finder of fact should be permitted to determine what, if any, degree of negligence should be attributed to Hurlock's conduct.
Accordingly, the summary final judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
OTT and DANAHY, JJ., concur.
NOTES
[1] The traffic light did not have a turn arrow, but was of the general variety applying to all traffic.
[2] Sections 316.075 and 316.122, Fla. Stat. (1973).