W. SHARP, Judge,
dissenting.
I respectfully disagree that summary judgment was properly granted in this case. In my view, the moving parties failed to carry their heavy burden of proof that the plaintiff, Carolyn Lee, could not show by competent evidence at trial that one or both of the two defendants, Martin Paving Company and the Florida Department of Transportation, had a duty to warn motorists of construction at the intersection of A1A and Seapark Drive in St. Johns County, Florida and the hazards of traffic on A1A and that they breached that duty by failing to put up barriers, lights, or a stop sign at the intersection.
The trial court ruled for the defendanVap-pellees on the narrow ground that the record before the court failed to show appellees had actual or constructive knowledge the stop sign was missing at the intersection of Sea-park and A1A on the night of the auto accident in which Lee was injured. The court relied on Wal-Mart Stores, Inc. v. King, 592 So.2d 705 (Fla. 5th DCA 1991), rev. denied, *1195 602 So.2d 942 (Fla.1992) and Smith v. Winn Dixie Stores, Inc., 528 So.2d 987 (Fla. 3d DCA 1980). In my view, neither case supports a summary judgment for appellees, if the record is read as it should be, taking all inferences in Lee’s favor.[1]
Lee filed a complaint against the Depart-mént and Martin, alleging a general premises liability theory that they had failed to maintain the Seapark intersection with A1A in a reasonably safe manner during the time it was being widened and storm water pipes and telephone cables were being installed along both sides of A1A. The complaint alleged that the accident occurred late at night, and that the road area on Seapark some eighty feet before the intersection with A1A, was rough and bumpy, and there were no lights or warning signs. Depositions in the record also established these hazards existed at the time of the accident, and that a motorist on Seapark had to go up and down sizeable swales to reach A1A, which could impair the motorist’s ability to see oncoming traffic on A1A
Teri Jo Lee, the driver of the car in which Lee was a passenger, testified in her deposition that she negotiated the construction hazards on Seapark and then suddenly and without warning, found herself in the middle of A1A. She was unable to avoid a collision with an oncoming motorist. Another passenger in the car at the time of the accident, Kelly Martin, also testified in her deposition she was not aware the car had entered the A1A intersection until it was too late to avoid the impending collision with another car on A1A. She yelled “[tjhere’s no stop sign” to warn Teri Jo, but it was already too late.
The record also established that Martin was the paving contractor for the construction project. Other subcontractors were doing the pipe and storm sewer work. The Department was closely supervising all the work being done. One employee of the Department was responsible to see all the required barricades, reflectors, lights and warning signs were put up as needed and that all were in place each day.
It was undisputed, however, that on the night of this accident the stop sign at the intersection of Seapark and A1A was completely missing. It took the Department some forty days after the accident to replace the stop sign. That was the trial court’s original reason for not granting Martin’s and the Department’s summary judgment motion.
In a deposition given by Royee, a Martin employee, it was suggested another subcontractor might have removed the stop sign in connection with work done on the site some three days prior to the accident. He thought it might have been removed in connection with widening the road at that point. He recalled a cedar tree had been severely trimmed back next to where the stop sign had been located. The old sign would have been some twenty-six feet beyond the place where the pavement on Seapark had been dug up to put in the storm sewer pipes.
A foreman for Jobalia (the subcontractor who did the pipe work on this project) also testified in his deposition that they had put in catch basins on the south side of Seapark, the west side of A1A where the pavement had been dug up and replaced at the time of the accident. He said Martin did all the clearing necessary to put in the catch basins and the road widening. He recalled having to move a stop sign to install a catch basin, but he said he never, faded not to put one back.
Based on these depositions and Lee’s complaint, standing alone, I think the trial judge was correct in denying Martin’s and the Department’s motions for summary judgment, in the first instance.
The accident arose out of a road construction project for which the Department, Martin and subcontractors were responsible, and the Department had elected to closely supervise the public safety measures taken in connection with the project. One or all of them had a duty to properly warn the traveling *1196 public about the construction at the intersection and the hazard of running blindly into the traffic on A1A.[2] The Department’s daily inspection failed to catch the missing stop sign. The fact that they delayed in replacing it for forty days after the accident does support the inference the sign had been down days prior to the accident.
However, this case went off course, in my view, when the trial judge improperly considered affidavits filed by the Department. The record establishes that the Department filed a motion for summary judgment, and noticed a hearing date of September 25, 1992. The Department’s sole theory was that Lee had faded to muster any evidence the Department actually knew the stop sign was missing prior to the accident, or that it had been missing a sufficiently long enough time to charge it with constructive knowledge of the sign’s absence. To this motion, the Department attached two affidavits prepared for execution by two of its employees. The affidavits say (in essence) the Department was unaware the stop sign was missing and it makes daily inspections. However, the affidavits were unexecuted.
Martin also filed a motion for summary judgment. It noticed a September 25, 1992, hearing date — the same time and day the Department had set its hearing. It filed no affidavits to raise the issue of the lack of actual or constructive knowledge on its part of the missing stop sign. It did, however, file a response to the Department’s affidavits, raising an issue about whether Martin or the Department had the duty to maintain the intersection under their contract. It quoted from Royce’s deposition that the Department had taken sole responsibility for public safety problems on the project.
After these motions were denied as noted above, Martin sought to reset its motion for the summary judgment hearing anew. Despite its filed notice in the record, it argued it had not called up its motion for argument. It then renamed its motion, a Motion for Rehearing.
At this later hearing, the trial judge granted summary judgment not only for Martin, but for the Department as well. The Department had not even filed a motion for rehearing. The court decided to give consideration to the untimely, unexecuted affidavits filed by the Department at the earlier hearing. By that time, executed affidavits had been filed with the court.
This was clearly erroneous as far as the Department was concerned. It had filed no motion for rehearing, and if it had, the trial court should not have considered the untimely affidavits at the rehearing. In Jarrett v. Publix Supermarkets, Inc., 609 So.2d 154 (Fla. 5th DCA 1992), this court said:
Nor can the adverse party breathe life into a belated opposing affidavit by filing a motion for rehearing the summary judgment and insisting the trial court consider the late affidavit at that hearing.
609 So.2d 154, n. 1.
As to Martin, the rehearing also was improper to the extent the trial court was relying on the Department’s belated affidavits. Martin never filed any affidavits on its own behalf that it lacked actual or constructive knowledge about the missing stop sign. Thus, Lee was under no duty to come forward with opposing affidavits to show a basis for such actual or constructive knowledge on Martin’s part. See Spradley v. Stick, 622 So.2d 610 (Fla. 1st DCA 1993). As discussed above, the deposition testimony was sufficient, in my view, to create an issue of fact regarding the stop sign and other grounds to show this construction project was negligently handled and maintained by the appellees when the accident occurred.
Lee immediately filed a motion for rehearing. She attached three affidavits executed by persons who lived near the accident site. Bennett alleged the stop sign was taken down during the whole time the intersection was being worked on, and that it was very hazardous and confusing at night, due to ditches, uneven grades, construction materials, and lack of hazard lights and warning signs to alert drivers on Seapark they were crossing A1A. Swofford alleged the stop sign was removed in connection with widening A1A, and had been missing at least three *1197 to four days before the accident. Dooley alleged the stop sign was removed during the construction project and was not replaced until some time after the accident and there were no warnings or barriers to alert drivers about the construction hazards.
The trial court apparently chose not to consider Lee’s affidavits, which clearly create an issue of fact concerning actual and constructive knowledge. This strikes me as a rather uneven application of justice — giving one side’s belated affidavits consideration and then refusing to give the opposing party a similar break. But, as noted above, I do not think Lee was required to file these affidavits based on the record then before the court. She should have been able to rely on the depositions and the allegations of her complaint. But surely, if the court chose to give the appellees a break and consider the Department’s belated affidavits,[3] it should have given Lee a similar opportunity.
My final point in this already-too-long dissent, is that I cannot agree this case is controlled by Wal-Mart Stores, Inc. v. King and Smith v. Winn Dixie Stores. In Wal-Mart, we held the trial judge should have directed a verdict for Wal-Mart because the plaintiff who fell in the store could not show the invisible slippery spot which caused her fall had been caused by the store, or that it was negligent in not learning of it soon enough to prevent the accident. Smith affirmed a summary judgment for the store because the customer could not show the leafy green substance the customer slipped on had been on the floor a sufficient time to place the store on “reasonable notice” of its existence.
In this case, there are clear inferences from the record which could be drawn in Lee’s favor that the construction crews, carrying out the Department’s project, removed the stop sign. In neither Wal-Mart nor Smith was there any inference available that the store itself (or its employees) caused the spills on the floor. Based on the depositions of record, at the time of the summary judgment, the intersection of A1A and Seapark was in a hazardous and unsafe condition when the accident occurred, due to various conditions, only one of which was the missing stop sign. The further inference is also available, based on the depositions alone, that the workers widening the road and doing work on the intersection removed the sign.
In my view, the time a hazardous condition is allowed to remain in place is only relevant in the kinds of cases where the landowner-defendant did not know about it and did not cause it. The lapse of time must be long enough to show the landowner-defendant had enough time to discover the problem and act to remedy it. Had any evidence been proffered in Wal-Mart that an employee spilled the oily slick on the floor by accident or design, the result in that case (I think) would have been different.
Even if the time factor is applicable to this kind of ease, I think a long enough time was established here. The Department’s daily inspection failed to catch the missing stop sign for forty days after the accident. Clearly this permits an inference it could have been missing days on the front end, when the construction project first began. Inferences from Royce’s deposition are also available to show that the sign first came down when the project began. And Lee’s affidavits filed for rehearing clearly show the stop sign was missing at least days before the accident. In my view, one day without a stop sign at a hazardous construction project intersection with busy A1A, is enough.
I would reverse.

. Athans v. Soble, 553 So.2d 1361 (Fla. 2d DCA 1989); Keramati v. Schackow, 553 So.2d 741 (Fla. 5th DCA 1989); Greene v. Kolpac Builders, Inc., 549 So.2d 1150 (Fla. 3d DCA 1989); Manucy v. Manucy, 362 So.2d 478 (Fla. 1st DCA 1978); U.S. Fire Insurance Co. v. Progressive Casualty Insurance Co., 362 So.2d 414 (Fla. 2d DCA 1978).

. See Simmonds-Hewett v. Keaton, 626 So.2d 249 (Fla. 4th DCA 1993).

. See Davis v. Lyall & Lyall Veterinarians., P.A., 506 So.2d 1072 (Fla. 5th DCA), rev. denied, 513 So.2d 1062 (Fla.1987).