714 So.2d 620 (1998)
Robert M. BRADSHAW and Pamela L. Bradshaw, Appellants/Cross-Appellees,
v.
STATE FARM AUTOMOBILE INS. CO., Appellee/Cross-Appellant.
No. 97-1161.
District Court of Appeal of Florida, Fifth District.
July 24, 1998.
Jack F. Durie, Jr., Orlando, and Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants/Cross-Appellees.
Kendall B. Rigdon of Rigdon, Muckerman, Alexander, Gerjel & Rigdon, P.A., Cocoa, for Appellee/Cross-Appellant.
PETERSON, Judge.
Robert M. Bradshaw and Pamela L. Bradshaw appeal the denial of their motion for new trial. They challenge the adequacy of a final judgment of $210,134.[1] The Bradshaws *621 challenge the finding that Robert was 20% negligent, the jury's failure to award Robert future medical expenses for the entire duration of his life expectancy, and the jury's failure to award any damages to Pamela for loss of consortium.
The case arose out of an automobile accident in which Robert's automobile struck another automobile making a left hand turn at an intersection. As Robert approached the intersection, he observed that there was an automobile stopped, facing his, in the intersection. Observing that the automobile's turn signal was not blinking and that the traffic light was green, Robert proceeded through the intersection. At approximately the mid-point of the intersection, the previously stationary automobile made a left turn immediately in front of Robert's automobile, causing a collision. Robert did not recall if, as he proceeded through the intersection, he attempted to reduce the speed at which he was traveling, although he testified that he was within the speed limit. He also admitted that he saw the automobile sitting in the intersection approximately from the time he was a half mile from the intersection and that, at that time, he had formed the impression that this automobile had time to make the left turn before he would be arriving at the intersection.
The highway patrol trooper, who investigated the accident, testified that based on the physical evidence he had examined, he could not conclude that Robert had done anything inappropriate in operating his automobile.
At the time of the accident, Robert was 39 years old, had never broken a bone in his body, and was quite athletic. Prior to the accident, he had participated in running, weightlifting, golf and swimming. As a result of the accident, he has a permanent injury to his right foot. He has undergone eight different surgeries, including one to place an artificial joint implant in his toe and walks with an altered gait as a result of the fusion.
Pamela testified that because of her husband's permanent injury, their children's transportation has become her responsibility because the injury to her husband's right foot prevents him from driving any major distances. Their social activities have been curtailed because "the drive is just too much for him." He can endure a fifteen minute drive, but he is unable to be the driver for an out-of-town trip. Whenever the family plans a trip, they have to consider Robert's condition. She testified that the emotional state of her husband subsequent to the accident is one which varies from hopeful and optimistic to "less so," and that when the "pain takes over":
It's very difficult to deal with on a day to day basis. Waking up thinking about it and going to sleep thinking about it. It's, it can wear on you. I try to be optimistic with him and for him and to pull him along; but there's many days that you can just look at him and see that he's not doing well.
When asked further how the injury to her husband has affected her, she testified that:
[I]t's been difficult, I don't want to paint it towards me but it's been difficult. When we had children we decided that I was going to stay home. My original job was pool. It's not a full-time employee. I get no benefits. I just worked when I'm needed and I don't have work when I'm not needed.
And through all this I've had to go back to work. I still don't work for full-time because there's not a position available, but I did have to go part-time so I could have benefits so our children are covered, my husband's covered, because we can't be without medical. And that's been a strain because I had to go back to school to keep my job.
Pamela further testified that in her job as a nurse, she's had to stay on the night shift because they decided, as a family, that someone would stay home with the kids all the time.

I. COMPARATIVE NEGLIGENCE
We affirm the finding of comparative negligence. In Trouette v. Reynolds, 593 *622 So.2d 1203 (Fla. 5th DCA 1992), as in the instant case, a driver made a left turn into the path of another car having the right of way. In reversing the summary judgment entered in favor of the driver with the right of way, we held:
It is the factfinder's task to determine whether a driver's failure to maintain a lookout or to exercise reasonable care and caution commensurate with all of the circumstances is a proximate cause of injuries received by one who negligently places oneself in a perilous position.
Id.; see also U.S. Fire Ins. Co. v. Progressive Casualty Ins. Co., 362 So.2d 414, 415 (Fla. 2d DCA 1978) ("Even though [a motorist] has a favorable light he must exercise reasonable care to determine that there is no pending traffic which would impede safe passage through the intersection").
Since there was competent substantial evidence from which a jury could conclude that Robert was 20% negligent in this accident, this appellate court will not substitute its judgment for that of the jury. See Garcia v. Lujando, 253 So.2d 725 (Fla. 3d DCA 1971). There was no abuse of discretion in the denial of the motion for new trial on the basis of the jury's 80%/20% liability determination. Schaller v. K-Mart Corp. 631 So.2d 380 (Fla. 3d DCA 1994).

II. FUTURE MEDICAL EXPENSES
The Bradshaws complain that the jury awarded them $1,000 per year in future medical expenses for only 22 years, despite the fact that the mortality tables introduced in this case showed that Robert's life expectancy was 32.5 years. The Bradshaws, however, are unable to cite to any case law which states that a jury must award future medical expenses, where a permanent injury is found, for the entire life expectancy of the injured party. Moreover, as State Farm points out, Robert's treating chiropractic physician testified that it was probable that the expenses which Robert would incur in the future would likely, with the passage of time, be at least partly related to the aging process in general, rather than solely for treatment of the injuries sustained in the accident. Robert, at the time of trial, was approximately 43 years old. He would be 65 years old at the point in time which the jury estimated that Robert would no longer have medical expenses which pertained to this accident. Given the jury's decision to award future medical expenses of only $1,000 per year, it is not unreasonable to assume the jury could have also reasonably concluded that this relatively minor amount of medical services necessary for treatment of the permanent injury sustained would eventually disappear before the end of Robert's life. The trial court did not abuse its discretion in denying the motion for new trial on this basis.

III. CONSORTIUM
We agree with the Bradshaws that the trial court erred in denying a new trial on Pamela's claim for loss of consortium. The Bradshaws presented competent substantial evidence showing that Pamela Bradshaw suffered a loss of consortium from her husband as a result of his injury. State Farm cites excerpts in Pamela's testimony showing that throughout the ordeal of her husband's pain and permanent injury, Pamela has tried to maintain a positive, accepting and responsible attitude. The fact that she has tried to deal with the life-altering injury of her husband in a positive manner does not alter the greater fact that her relationship with her husband has been negatively impacted in a substantial manner by the injury. We do agree with State Farm's statement that "appellant's request for a new trial in total based upon the zero award for consortium is unsupported by caselaw whatsoever," [emphasis added]. Only a new trial on damages for loss of consortium is required. Christopher v. Bonifay, 577 So.2d 617 (Fla. 1st DCA 1991); Fleming v. Albertson's, Inc., 535 So.2d 682 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla.1989) ("When the claiming spouse presents evidence that is substantial, undisputed, and unrebutted concerning the impact the injury had on the marital relationship, such spouse is entitled to receive at least nominal damages for loss of consortium"); Gonzalez v. Westinghouse Electric Corp., 463 So.2d 1229 (Fla. 4th DCA 1985); Hagens v. Hilston, 388 So.2d 1379 (Fla. 2d DCA 1980); Albritton v. State Farm *623 Mutual Auto. Ins. Co., 382 So.2d 1267 (Fla. 2d DCA 1980); Shaw v. Peterson, 376 So.2d 433 (Fla. 1st DCA 1979); Kinne v. Burgin, 311 So.2d 695 (Fla. 3d DCA 1975).
Accordingly, we reverse and remand for a new trial on the issue of damages that are awardable to Pamela Bradshaw for her loss of consortium.[2] The trial court's order denying the Bradshaws' motion for a new trial is otherwise affirmed. Upon retrial, if the evidence of a substantial loss of consortium is again unrefuted, the jury should be instructed that an award for loss of consortium must be given.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
COBB, J., and JACOBUS, B., Associate Judge, concur.
NOTES
[1] The damages award of $318,668 was reduced by a finding that Robert was 20% negligent, and further reduced by a setoff of $46,000 for amounts previously received from collateral sources.
[2] We need not address State Farm's cross-appeal since the issue raised has been rendered moot by our remand only on the issue of damages for loss of consortium.