724 So.2d 183 (1999)
William ACREE, as personal representative, etc., Appellant,
v.
HARTFORD SOUTH INCORPORATED, etc., Appellee.
No. 98-1311.
District Court of Appeal of Florida, Fifth District.
January 15, 1999.
*184 Paul B. Irvin of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, for Appellant.
Kurt M. Spengler and Michael R. D'Lugo of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Appellee.
W. SHARP, J.
Acree, as personal representative of the estate of April D. Entenman, appeals from a final judgment after a jury trial, which determined Hartford South Incorporated, Inc. was not liable for April's death in a personal injury case. April and her companion had been attempting to cross a five-lane highway at 9:00 p.m. at night, from west to east in a diagonal manner, not at a marked pedestrian crossing. Apparently they did not see the northbound traffic. A truck owned by Hartford and driven by Hartford's employee, Santiago, traveling north in the right lane, struck and killed both pedestrians just before they reached the edge of the highway. Santiago testified he never saw the pair.
On appeal, Acree argues that the trial court erred in failing to give the plaintiff's requested jury instructions on special hazards or unlawful speed, and in the alternative, that the trial court erred in permitting the defendant's expert witness to testify about "human factors" which could explain why Santiago did not see April and her companion prior to hitting them. We affirm.
Olsen, the defense expert, testified that there were road conditions which adversely affected Santiago's vision and ability to see pedestrians. In summary they were: 1) it was a dark night; 2) there were no street lights in the area; 3) the background was "cluttered" with signs and lights; 4) on-coming vehicles provided headlight glare; 5) Santiago was following another truck which was in the process of slowing down its speed; and 6) the pedestrians ran across the roadways from the driver's left to right, as opposed from right to left.
Based on this testimony, the plaintiff argued the trial court should give an instruction pursuant to section 316.185. That section provides:

The fact that the speed of a vehicle is lower than the prescribed limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazards exist or may exist with respect to pedestrians or other traffic or by reason of weather or other roadway conditions, and speed shall be decreased as may be necessary to *185 avoid colliding with any person, vehicle, or other conveyance on or entering the street in compliance with legal requirements and the duty of all persons to use due care. (emphasis added)
The evidence in this case pointed to the fact that Santiago, at the time of the accident, was traveling at or below the speed limit. The plaintiff wanted the trial court to instruct the jury that, under the conditions described by the defense expert, there were special hazardous conditions contemplated by section 316.185, which should have required Santiago to slow down below the speed limit and exercise more than normal caution. We disagree.
Section 316.185 refers to exceptional circumstances or special hazards of which a driver should be aware, while driving the speed limit on a road or highway. Examples may be rain, fog, smoke, crowded traffic conditions, or many pedestrians crossing and re-crossing the roadway, perhaps unlawfully, after a parade, or the like. However, in this case, those kinds of conditions were not established at the time of the fatal accident. The only factors established were those that every motorist encounters driving at night on highways: it is dark; there are not always street lights beyond cities or on interstates; and on-coming traffic headlights impair the driver's vision to a degree. Were we to say these are special hazardous conditions, we would also have to conclude that driving at the speed limit at night is, in most cases, negligent.
Further, it appears to us that the special hazards referenced in section 316.185 must have reference to dangers or threats of which a driver is either aware or should be conscious. In this case, the pedestrians ran across a dark highway in a manner and place not reasonably expected by drivers of vehicles using it, and quite clearly in violation of pedestrian traffic laws.[1] A motorist is not bound to anticipate such negligent acts or omissions on the part of others. To the contrary, he or she is entitled to assume others will obey the traffic laws. See Chaffin v. Brame, 233 N.C. 377, 64 S.E.2d 276, 279 (N.C.1951). Santiago did not see the two pedestrians nor do we think he was duty-bound to have seen them under the circumstances of this case.
We also find no error in the trial court's admission of the defense expert's testimony concerning human perception factors. Human factors testimony is governed by the same rules and considerations that apply to other expert testimony. The testimony must involve a subject beyond the common knowledge and understanding of the average layman, and it must aid the jury in making its factual determinations. See Angrand v. Key, 657 So.2d 1146 (Fla.1995); Buchman v. Seaboard Coast Line R. Co., 381 So.2d 229 (Fla. 1980); Mills v. Redwing Carriers, Inc., 127 So.2d 453 (Fla. 2d DCA 1961). If the testimony meets that criteria, human factors testimony is admissible. See Welfare v. Seaboard Coast Line Railway Co., 373 So.2d 886 (Fla.1979); Keene v. Chicago Bridge & Iron Co., 596 So.2d 700, 709 (Fla. 1st DCA 1992); Florida Power Corp. v. Barron, 481 So.2d 1309 (Fla. 2d DCA 1986); Seaboard Coast Line Railway Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971). Failure to admit such testimony, when warranted, is reversible error. Griefer v. DiPietro, 625 So.2d 1226 (Fla. 4th DCA 1993).
In this case, Olsen's testimony was offered to explain to the jury how an average, alert driver could fail to see two persons who ran in front of his truck. Some of the testimony was within the common understanding and knowledge of an average lay person;, e.g., the faster one is going, the less ability he has to react to an emergency situation; it was dark and there were no lights; and the vehicle in front of him was slowing. All of these things appear to be commonplace *186 occurrences which a juror would know interferes with a driver's ability to see pedestrians, and thus this testimony may not have been appropriate for an expert. Simon v. Simon, 260 Kan. 731, 924 P.2d 1255 (Kan. 1996).
However, other factors Olsen testified about do not appear to be commonly understood by average jurors to impair a driver's ability to see pedestrians. For example: that a "cluttered background" with lots of lights and signs compromises visibility; that generalized glare from oncoming headlights degrades visibility of pedestrians; and the fact that the victims ran from the driver's left to right (instead of from right to left) made it less likely they would be seen. Although all of the factors testified to by the expert may normally occur while a motorist is driving at night, the effect of those factors may not have been commonly understood by the jurors. Thus the expert's testimony was properly admitted in evidence. Hill.
AFFIRMED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] Section 316.130(10), Florida Statutes, provides:

Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.
Section 316.130(12), Florida Statutes, also provides:
No pedestrian shall, except in a marked crosswalk, cross a roadway at any other place than by a route at right angles to the curb or by the shortest route to the opposite curb.