866 So.2d 192 (2004)
Betty P. HOWELL and Earl A. Howell, Jr., Appellants,
v.
Pamela L. WINKLE, Appellee.
No. 1D02-5034.
District Court of Appeal of Florida, First District.
February 24, 2004.
*193 Stephen E. Day and Rhonda B. Boggess of Taylor, Day & Currie; and Dwane D. Tyson and Debra Carter Taylor of William R. Swain & Associates, Jacksonville, for Appellants.
James H. Daniel and Charles A. Sorenson of Coker, Myers, Schickel, Sorenson & Green, P.A., Jacksonville, for Appellee.
VAN NORTWICK, J.
In this negligence action brought by appellee, Pamela L. Winkle, against Betty P. Howell and Earl A. Howell, Jr., arising out of an automobile accident between the parties, the Howells appeal orders directing verdicts as to the negligence of Ms. Howell and the comparative negligence of Ms. Winkle. At the close of the Howells' case, the trial court directed a verdict against the Howells on their affirmative defense that Ms. Winkle was comparatively negligent. Following the jury verdict in favor of the Howells, the trial court directed a verdict as to the negligence of Ms. Howell in favor of Ms. Winkle and ordered a new trial on damages only, or in the alternative, ordered that a new trial take place both as to liability and damages. The *194 Howells contend both directed verdicts were erroneous and the trial judge abused her discretion in alternatively granting a new trial. We agree that the trial court erred in directing a verdict for Ms. Winkle on the issue of her comparative negligence and hold that this error requires a new trial on both liability and damages. Because the negligence of both Ms. Howell and Ms. Winkle were issues for the jury, it was similarly error for the trial court to direct a verdict as to Ms. Howell's negligence. The remedy for directing a verdict for Ms. Winkle on the issue of her comparative negligence is a new trial on both liability and damages. Accordingly, we do not address the alternative portion of the trial court's order which orders a new trial both as to liability and damages on the grounds the defense verdict was contrary to the manifest weight of the evidence.

Factual and Procedural Background
The accident in this case occurred in Jacksonville on Monument Road near the intersection of Atlantic Boulevard at an entrance to the Regency Square Mall. There is no traffic light or other control device at this mall entrance. At the site, Monument Road has two lanes traveling southward, two traveling northward and two turning lanes in the center.
On August 18, 1999, Ms. Howell was driving north on Monument Road to Regency Square Mall with a friend as a passenger. According to her testimony, she pulled into the northbound left turn lane, stopped her car in the turn lane, and put on her left turn signal. It is undisputed that traffic in the left southbound turn lane and left southbound through lane on Monument Road was backed up from the intersection of Atlantic Boulevard and at a standstill at the turn into the mall, but the traffic had stopped in a manner that allowed an opening for vehicles to turn left across the southbound lanes into the mall. Ms. Howell and her passenger both testified that Ms. Howell crossed the southbound lanes gradually, pulling first across the southbound center left turn lane, then pulling across the left travel lane in front of the stopped traffic, then stopping and looking north to see if any vehicles were coming in the right curb lane. Ms. Howell then proceeded across the southbound right curb lane. Her car was three-quarters across the lane when Ms. Winkle's car struck her car at the back wheel on the passenger side. Ms. Howell testified that she did not see the Winkle vehicle before impact or hear any horns or screeching of brakes. The force of the impact pushed Ms. Howell's vehicle into another vehicle waiting to exit the mall.
Another witness was in her car in the southbound left travel lane of Monument Road when the accident took place. The traffic in her lane was stopped and she had left a gap in front of her vehicle for the vehicles to turn into or out of the mall. Cars were passing by her on the right in the southbound right curb lane. She testified that Ms. Howell's vehicle approached the gap in front of her car, paused and then traveled across the southbound turn lane and her lane into the right curb lane. She could not gauge how fast Ms. Howell was driving, but she thought Ms. Howell's car "was moving a little bit fast." She did not see the impact of the vehicles; she just heard the crash.
Ms. Winkle testified that she was traveling south on Monument Road at approximately 30 to 35 mph in a 35 mph zone. She was planning to cross over Atlantic Boulevard on Monument Road. She testified that she did not see the Howell vehicle until it was directly in front of her. Ms. Winkle also testified that, when she turned onto Monument Road, she thought that she had turned into the left travel lane, not the right curb lane. She further testified, *195 however, that once on Monument Road she had not changed lanes. The accident occurred in the right curb lane.
At the close of Ms. Winkle's case, the Howells moved for a directed verdict in their favor on liability, among other things. The motion was denied. At the close of the Howells' case, Ms. Winkle moved for directed verdict on all issues of liability. The court denied the motion for directed verdict as to the liability of Ms. Howell, but granted a directed verdict in Ms. Winkle's favor as to her comparative negligence. Thus, the jury was deprived of its opportunity to apportion fault between these drivers and was left with the choice of either assessing fault for the accident entirely to Ms. Howell, or finding no liability. The Howells requested a special jury instruction based on section 316.185, Florida Statutes (1999), which provides that a driver should decrease speed below the posted limit when there is a special hazard. The trial court denied the request, ruling that no special hazard existed on the date and place of this accident.
The jury returned a verdict finding that there was no negligence on the part of Ms. Howell which was a legal cause of damage to Ms. Winkle. Ms. Winkle renewed her motion for directed verdict and moved for a new trial. Thereafter, relying upon Emmer v. Perez, 757 So.2d 612 (Fla. 3d DCA 2000), the court entered an order directing a verdict on Ms. Howell's liability, reasoning that the only reasonable inference which could be drawn from the evidence was that Ms. Howell was negligent as she proceeded across the last lane of traffic before reaching the entrance to the mall and that she was the sole cause of the accident because she turned left into the pathway of an oncoming vehicle. The trial court ordered a new trial on damages. Alternatively, the trial court ruled that Ms. Winkle was entitled to a new trial on both liability and damages because the verdict was contrary to the manifest weight of the evidence.

Directed Verdicts
Before granting a directed verdict, the trial court must view the evidence and testimony in the light most favorable to the nonmoving party. Having done that, if the court determines that no reasonable jury could render a verdict for the nonmoving party, a directed verdict is appropriate. However, if there is any evidence upon which a jury could lawfully find for the nonmoving party, a verdict should not be directed. Miller v. City of Jacksonville, 603 So.2d 1310, 1311-12 (Fla. 1st DCA 1992). Motions for directed verdict are rarely appropriate in negligence cases. Scott v. TPI Restaurants, Inc., 798 So.2d 907, 908 (Fla. 5th DCA 2001). Where there is evidence which supports an inference of comparative fault on the part of the plaintiff, the issue of comparative negligence should be submitted to the jury. Langmead v. Admiral Cruises, Inc., 610 So.2d 565, 566 (Fla. 3d DCA 1992). If the inference of comparative negligence is possible from the plaintiff's own evidence, the defendant need not present further evidence of comparative negligence in order to survive the plaintiff's motion for directed verdict. Id. at 567.
In this case, the plaintiff's own evidence was sufficient to support an inference of comparative fault. Thus, the issue of her comparative negligence should have been submitted to the jury. Viewing the evidence in favor of the nonmoving party, Mrs. Howell, the jury could have accepted the testimony of Ms. Winkle that she pulled into the second lane, not the right curb lane, and that she was not in the far right curb lane at the time Mrs. Howell stopped and looked north on Monument Road, not seeing any traffic. The jury could have inferred that Ms. Winkle thereafter *196 changed lanes from the stopped left traffic lane into the flowing right curb lane just before the accident. See Florida Power Corp. v. Coppola, 765 So.2d 858, 860 (Fla. 5th DCA 2000).
Because the trial court erroneously directed a verdict for Ms. Winkle on the issue of her comparative negligence, a new trial on both liability and damages is required. Home Depot USA Company, Inc. v. Taylor, 676 So.2d 479, 480 (Fla. 5th DCA 1996); see also Carnival Cruise Lines, Inc. v. Levalley, 786 So.2d 18, 19-20 (Fla. 3d DCA 2001); City of Winter Haven v. Allen, 541 So.2d 128, 137 (Fla. 2d DCA 1989); Ryan v. Atlantic Fertilizer & Chemical Co., 515 So.2d 324, 327-28 (Fla. 3d DCA 1987); ITT-Nesbitt, Inc. v. Valle's Steak House of Ft. Lauderdale, Inc., 395 So.2d 217 (Fla. 4th DCA 1981). There were issues of fact in this case concerning whether Ms. Winkle exercised reasonable care as she proceeded down Monument Road. U.S. Fire Insurance Company v. Progressive Casualty Insurance Company, 362 So.2d 414, 415 (Fla. 2d DCA 1978). The finders of fact should have been permitted to determine what degree of negligence was attributable to Ms. Winkle's conduct. Id. at 417.
Similarly, the trial court erred in directing a verdict on Ms. Howell's negligence. Emmer v. Perez, upon which the trial court relied, is distinguishable. The facts in that case as stated by the appellate court are as follows:
As Ms. Emmer approached the intersection at 40th Avenue, she came to a complete stop in the left turn lane to permit the westbound traffic to pass and clear before making a left turn. At some point, a car traveling westbound in the left lane stopped and its driver motioned for Ms. Emmer to make her left turn. At trial, Ms. Emmer acknowledged that the unidentified motorist who summoned her to turn was not a police officer and she also admitted that she could not see the westbound traffic traveling in the remaining right lane. She thus acknowledged that no one in the remaining right lane similarly stopped and yielded the right-of-way for her to turn left. When Ms. Emmer proceeded to make a left turn she never stopped to check the status of traffic in the westbound right lane. As she entered the westbound right lane, while making a left turn, her car was struck by Ms. Perez. According to Ms. Perez's testimony, she did not see Ms. Emmer's car prior to the accident because the car in the left lane had blocked her view.
Id. 757 So.2d at 613. Based on these facts, the appellate court upheld the trial court's directed verdict, noting that the sole cause of the accident was Ms. Emmer's failure to stop and check the traffic in the westbound right lane before proceeding into that lane in front of Ms. Perez. In the instant case, however, both Ms. Howell and her passenger testified that they did stop and look for oncoming traffic before proceeding into the southbound right curb lane. As a result, here there were disputed factual issues for the fact-finder to resolve.
To the extent the jury did decide that Ms. Howell was faultless, that decision was made by a jury which was erroneously deprived of the ability to decide Ms. Winkle's comparative fault. As a result, the jury was left with the choice to find Ms. Howell entirely at fault or not at all at fault. As this court recently stated in Moore v. State, 861 So.2d 1251 (Fla. 1st DCA 2003):
When reviewing an order for directed verdict, we like the trial court are required to evaluate the evidence in the light most favorable to the nonmoving party, and every reasonable inference *197 must be found in the nonmoving party's favor.
A directed verdict is not appropriate where there are issues of negligence for the jury. Id.

Special Hazard Jury Instruction
The Howells also argue that the trial court erred in denying their requested special hazard jury instruction. Although, in view of our holding above, it is not necessary for us to address this issue, we address it to provide guidance to the trial court in the new trial on remand. 3B TV, Inc. v. State, 794 So.2d 744, 748 (Fla. App. 1st DCA 2001).
The trial court's decision regarding jury instructions is judged using an abuse of discretion standard of review and reversible error occurs if the jury was misled by the failure to give the requested instruction. Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990). Here, the trial judge did not abuse her discretion in denying this requested jury instruction. There was no "reasonable possibility that the jury could have been misled by the failure to give the instruction." Id. (quoting Ruiz v. Cold Storage & Insulation Contractors, Inc., 306 So.2d 153, 155 (Fla. 2d DCA 1975)). Further, based upon the record before us, we believe that the trial court correctly found that the facts here did not support the instruction requested. "Special hazards" are generally limited to those situations in which weather, roadway or exceptional traffic conditions require a driver to decrease her driving speed. See Acree v. Hartford South, Inc., 724 So.2d 183, 184-85 (Fla. 5th DCA 1999). The presence of a pedestrian or bicyclist may constitute a special hazard. See Sotuyo v. Williams, 587 So.2d 612, 614-15 (Fla. 1st DCA 1991). The instances where traffic conditions constitute a special hazard are generally limited to exceptional traffic conditions associated with events that create unusually crowded traffic conditions, such as parades, festivals, or sports events. Acree, 724 So.2d at 185. Normal traffic conditions, encountered by drivers everyday, do not constitute a special hazard. Id. Here, there is no evidence of the existence of weather or roadway conditions which might constitute a special hazard. Further, the record reflects that the traffic conditions around the mall were not unusually crowded. Thus, there was no record basis for the requested special hazard instruction.
For the foregoing reasons, the trial court's directed verdicts on Ms. Winkle's comparative negligence and on Ms. Howell's negligence are reversed and the cause is remanded for a new trial on both liability and damages.
REVERSED and REMANDED.
KAHN and WEBSTER, JJ., concur.