2015 COA 67

Ilea DEMPSEY and Ashkan Zand,
Plaintiffs–Appellees,

v.

DENVER POLICE DEPARTMENT, and
the City and County of Denver, Colorado, Defendants–Appellants.

Court of Appeals No. 13CA1614

Colorado Court of Appeals,
Div. I.

Announced May 21, 2015

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.

Kidneigh & Kaufman, P.C., Stephen C. Kaufman, Jennifer L. Crichton, Charles G. Crichton, Denver, Colorado, for Plaintiffs–Appellees

D. Scott Martinez, City Attorney, Barry A. Schwartz, Assistant City Attorney, Denver, Colorado, for Defendants–Appellants

Opinion by JUDGE BOORAS

¶1 In this personal injury action, defendants, the Denver Police Department and the City and County of Denver (collectively Denver), bring this interlocutory appeal, pursuant to section 24–10108, C.R.S. 2014. Denver seeks review of the trial court's denial of its motion to dismiss the complaint of plaintiffs, Ilea Dempsey and Ashkan Zand, for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, C.R.S. 2014. We vacate and remand for further findings.

## I. Factual Background

¶2 On January 21, 2012, at approximately dusk, plaintiffs were travelling northbound on Santa Fe Drive in Denver near the intersection with Mississippi Avenue shortly before it passes under I–25. At that time, major road construction was taking place on Santa Fe, and numerous signs were posted apprising drivers of the activity.

¶3 While plaintiffs were travelling northbound on Santa Fe, Officer Heather Jossi of the Denver Police Department received a call about a possible robbery. She activated her lights and siren, headed west on Mississippi, and then turned north on Santa Fe, reaching speeds as high as fifty-six miles per hour as indicated on the Crash Data Retrieval (CDR) device in Officer Jossi's patrol car. Officer Jossi alternatively accelerated and decelerated in an attempt to get around traffic on Santa Fe.

¶ 4 Plaintiffs saw Officer Jossi approaching their car from behind.[1] They observed Officer Jossi driving much faster than the flow of traffic, rapidly weaving through traffic, cutting vehicles off, and causing vehicles to pull over to both the right and left. When the car behind them pulled over, plaintiffs saw Officer Jossi accelerate and then hit the rear of their car.

## II. Procedural Background

¶ 5 Plaintiffs brought this action against Denver and Officer Jossi seeking compensation for the injuries they sustained in the accident. Dempsey also sought compensation for damages to her car, which was towed from the accident scene.

¶ 6 Denver moved to dismiss the claims against it on the basis that the trial court lacked subject matter jurisdiction under the CGIA because its immunity from suit was not waived under section 24–10–106(1)(a), C.R.S.2014, for the operation of a motor vehicle. Denver asserted that Officer Jossi's actions in driving the police vehicle fell within an exception for emergency vehicles operating within the provisions of section 42–4–108(2) and (3), C.R.S.2014.

¶ 7 As pertinent here, section 42–4–108(2)(c) allows the driver of an authorized emergency vehicle, while using audible or visual signals, to exceed the lawful speed limits so long as the driver does not endanger life or property.

¶ 8 Denver asserted that Officer Jossi was not exceeding the speed limit at the time of the accident, and did not endanger life or property when she exceeded the maximum allowed speed limits earlier in the incident. In response, plaintiffs argued that Officer Jossi's actions did not fall within the circumstances outlined in section 42–4–108(2) and (3) because her actions in driving the police car endangered life and property while she was speeding.

¶ 9 The trial court conducted a two-day evidentiary hearing in accordance with the procedures set forth in *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848

P.2d 916 (Colo.1993). At the conclusion of that hearing, the court ruled from the bench and denied Denver's motion. First, the court noted that there was conflicting information about whether Officer Jossi had exceeded the speed limit both shortly prior to and at the time of impact, depending on where the impact occurred. Then, relying on *Corsentino v. Cordova*, 4 P.3d 1082, 1093 (Colo.2000), the court examined the totality of the circumstances surrounding the collision and found that Officer Jossi's actions in driving her vehicle endangered life and property.

¶ 10 The trial court subsequently issued a written order adopting the findings it had made from the bench. Denver then brought this interlocutory appeal.

¶ 11 After the parties had filed their briefs, this court issued an order of clarification to Denver noting that a review of the notice of appeal, the file, and the briefs showed that Officer Jossi was not listed on the notice of appeal, but was listed on the briefs and the motion for oral argument filed by Denver. The order sought clarification regarding whether Officer Jossi should have been listed on the notice of appeal.

¶ 12 The City Attorney then sought to amend the notice of appeal to include Officer Jossi as an appellant. Plaintiffs filed a response objecting to that request. After consideration of the parties' responses, resolution of this issue was deferred to the division determining the merits of the appeal.

## III. Motion to Amend Notice of Appeal

¶ 13 We reject Denver's request to amend the notice of appeal to include Officer Jossi as an appellant.

¶ 14 C.A.R. 3 provides that an appeal permitted by law shall be taken by filing a notice of appeal within the time allowed by C.A.R. 4. Under section 24–10–108, a trial court's ruling on a motion brought by a public entity that raises the issue of sovereign immunity is final and subject to interlocutory appeal. *See Richland Dev. Co. v. E. Cherry Creek Valley Water & Sanitation Dist.*, 899 P.2d 371, 372–73 (Colo.App.1995).

---

**1.** Plaintiff Zand, who was driving, saw Officer Jossi's approach through his rear view mirror.

His passenger, plaintiff Dempsey, turned and looked back in response to the police siren.

¶ 15 The timely filing of a notice of appeal is jurisdictional. *See Cline v. Farmers Ins. Exch.*, 792 P.2d 305, 306 (Colo.App. 1990), *overruling on other grounds recognized by Janssen v. Indus. Claim Appeals Office*, 40 P.3d 1 (Colo.App.2001). However, a party need only substantially comply with the contents of the notice of appeal. *See Widener v. Dist. Court*, 200 Colo. 398, 401, 615 P.2d 33, 34 (1980) ("If the prevailing party could not be misled as to the intention to appeal or as to the judgment from which the appeal is to be taken, any technical defect in the notice of appeal is harmless."). Thus, the failure to include a party in, or on the caption of, a notice of appeal may be excused under certain circumstances. *See Cruz v. Benine*, 984 P.2d 1173, 1181 (Colo.1999) (holding that this court erred in dismissing appeal of attorney fees award against attorney which was entered jointly and severally against attorney and attorney's client where notice of appeal listed only client, not attorney); *Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1308 (Colo.App.1998) (failure to list parties in caption of notice of appeal was harmless where parties were listed within the notice of appeal).

¶ 16 In its motion to amend, Denver noted that Officer Jossi had not been included as a party in its motion to dismiss. It also questioned whether she had been properly served with process in the underlying action. And, as is apparent, the trial court's order did not resolve any claims or issues as to Officer Jossi.

¶ 17 Therefore, given these circumstances, we conclude that it would be inappropriate to amend the notice of appeal to include Officer Jossi as an appellant.

## IV. Standard of Review on the Merits

¶ 18 Whether immunity has been waived under the CGIA is an issue of subject matter jurisdiction. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo.2000). The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination under the CGIA will not be reversed unless clearly erroneous. *Trinity*, 848 P.2d at 924–25 (the trial court is the fact finder regarding jurisdictional determinations under the CGIA, and appellate review is highly deferential); *see also Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 86 (Colo.2003) (noting that the plaintiff's burden is relatively lenient). However, if the facts are undisputed, the issue is one of law, and the appellate court reviews the trial court's jurisdictional ruling de novo. *Springer*, 13 P.3d at 798.

## V. Discussion

¶ 19 Denver contends that the trial court erred in denying its motion to dismiss because its immunity is not waived absent a finding that plaintiffs' injuries resulted from Officer Jossi exceeding the lawful speed limit. In particular, Denver argues that the trial court failed to make any findings regarding whether Officer Jossi was exceeding the lawful speed limit at the time of the accident, and that even if the court's ruling can be so construed, the record does not support such a finding. We conclude that in order to find a waiver of immunity, the trial court was required to find that Officer Jossi both exceeded the lawful speed limit and endangered life and property. We agree that the record does not clearly demonstrate that the trial court made a finding as to whether Officer Jossi was exceeding the lawful speed limit at the relevant time and, thus, we remand for further findings.

### A. Statutory Construction

¶ 20 Construction of a statute is a question of law we review de novo. *Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo.1995). In interpreting a statute, we strive to effectuate the General Assembly's intent. *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63, 67 (Colo. 1990). That intent is determined by looking at the statutory language, giving words and phrases their plain and ordinary meanings. *Walton v. State*, 968 P.2d 636, 644 (Colo. 1998).

¶ 21 Because the immunity created by the CGIA derogates Colorado's common law, the provisions granting immunity must be strictly construed. *See Bertrand v. Bd. of Cnty. Comm'rs*, 872 P.2d 223, 227 (Colo.1994). Accordingly, the provisions

waiving immunity must be construed broadly, but the exceptions to waivers are construed strictly because their ultimate effect is to grant immunity. *Corsentino,* 4 P.3d at 1086. Thus, the provision excepting emergency vehicles from the waiver of immunity for injuries resulting from the operation of a motor vehicle in section 24–10–106(1)(a) must be strictly construed. *Id.*

### B. Applicable Statutes

¶ 22 Section 24–10–106(1)(a) provides for the waiver of a public entity's immunity for injuries resulting from the operation of a motor vehicle that is owned or leased by the public entity by a public employee acting in the scope of his or her employment. However, it also provides an exception to the waiver of immunity for emergency vehicles operating within the provisions of subsections 42–4–108(2) and (3), which provide:

(2) The driver of an authorized emergency vehicle, when responding to an emergency call, ... may exercise the privileges set forth in this section, but subject to the conditions stated in this article. The driver of an authorized emergency vehicle may:

....

(c) *Exceed the lawful speeds set forth in section 42–4–1101(2)* or exceed the maximum lawful speed limits set forth in section 42–41101(8) *so long as said driver does not endanger life or property ....*

(3) The exemptions and conditions provided in paragraphs (b) to (d), in their entirety, of subsection (2) of this section for an authorized emergency vehicle shall continue to apply to section 24–10–106(1)(a), C.R.S., only when such vehicle is making use of audible or visual signals meeting the requirements of section 42–4–213....

(Emphasis added.)

¶ 23 Section 42–4–1101(2), C.R.S.2014, in turn, sets the lawful speed limits for various types of roads.[2] The listed speed limits are lawful, "[e]xcept when a special hazard exists that requires a lower speed ...." § 42–4–1101(2) (emphasis added). Thus, to conclude that the officer was exceeding the lawful speed limit, the trial court was required to find either that the officer exceeded the posted speed limit or, alternatively, that the officer exceeded a lower speed which was required by the existence of a special hazard.

### C. Special Hazard

¶ 24 Section 42–4–1101 does not define a "special hazard." However, section 42–4–1101(3) suggests that a "special hazard" would include "pedestrians or other traffic" or "weather or highway conditions."

¶ 25 Relying on cases from other jurisdictions, Denver contends that a "special hazard" must be the result of an unusual event such as heavy traffic after a parade or sports event, and that "routine traffic or construction" does not qualify. However, the cases that Denver relies on do not appear to restrict "special hazards" to traffic caused by events. Rather, they appear to require only traffic which is something other than a "normal traffic condition." *See Howell v. Winkle,* 866 So.2d 192, 197 (Fla.Dist.Ct.App.2004) (noting that the traffic conditions at issue near a shopping mall were not unusually heavy); *Acree v. Hartford S. Inc.,* 724 So.2d 183, 185 (Fla.Dist.Ct.App.1999) (giving examples of "special hazards" as "rain, fog, smoke, crowded traffic conditions, or many pedestrians crossing and re-crossing the roadway, perhaps unlawfully, after a parade, or the like," and noting that those kinds of conditions had not been established); *see also Watkins v. Schmitt,* 172 Ill.2d 193, 216 Ill. Dec. 822, 665 N.E.2d 1379, 1387 (1996) (reasoning that a stopped school bus could qualify as a "special hazard" requiring reduced speed because it "interfere[d] with the way motorists drive and the flow of traffic").

¶ 26 Although we offer no opinion as to whether the traffic conditions in the present case qualified as a "special hazard," we see no reason to preclude traffic conditions caused by a construction zone from so qualifying. *See Weems v. Dep't of Transp., Bu-*

---

**2.** Section 42–4–1101(8), which is not at issue here, sets the maximum lawful speed on any highway at seventy-five miles per hour.

*reau of Driver Licensing,* 990 A.2d 1208, 1214 (Pa.Commw.Ct.2010) (Speed may be imprudent or unreasonable under circumstances which may include "not only the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts.).").

### D. The *Trinity* Hearing

¶ 27 At the *Trinity* hearing, several witnesses testified that the accident occurred near dusk, the traffic was heavy and moving slowly, there was major construction on the road with numerous signs and cones, and Officer Jossi was travelling very fast for the conditions, causing chaos and confusion for the drivers trying to get out of her way. The CDR showed that Officer Jossi was traveling fifty-six mph approximately twenty seconds before the impact and forty-two mph just before impact.

¶ 28 The trial court noted that there was conflicting evidence as to whether Officer Jossi had "exceeded the speed limit both prior to and at the time of the impact depending on where you believe the impact occurred." However, the trial court did not resolve the conflict, but rather found only that Officer Jossi's actions endangered life or property in the way she was driving her vehicle. The court noted that Officer Jossi was driving "at or about the speed limit at the time of impact," but that this was "after she clearly applied her brakes before impact."

¶ 29 Similarly, the trial court made several findings regarding the road and traffic conditions, but did not specifically determine whether these conditions qualified as a "special hazard," which required a slower speed for purposes of section 42–4–1101(2). The trial court found that the signage along the stretch of roadway where the accident occurred was confusing, the roadway was an obvious work zone, the lanes reduced somewhat abruptly, the speed limit dropped from forty-five mph to twenty-five mph in a short distance, and the accident occurred around dusk. The court also commented that if Officer Jossi had been traveling a "bit slow-

er," then the accident would not have happened.

### E. Relevant Time Period

¶ 30 Plaintiffs argue that the emergency vehicle exception would not apply if Officer Jossi was speeding and endangering life and property at any point during her response, not just at or near the time of impact. Conversely, Denver conceded during oral argument that the relevant time period was not "at the moment of impact," but rather during a period prior to impact that might have affected what occurred.

¶ 31 Denver's view is consistent with the requirement in section 24–10–106(1) that the waiver of governmental immunity pertains to injuries "resulting from" the operation of a motor vehicle. Thus, the relevant period to consider in determining whether Officer Jossi was exceeding the lawful speed limit is the period prior to the accident during which any improper speed affected the collision that occurred.

### VI. Conclusion

¶ 32 Because, in addition to the finding that Officer Jossi had endangered life and property, the trial court was required to make a finding under section 42–4–108(2)(c) as to whether Officer Jossi had been speeding during the relevant period, and it is not clear from the record that the trial court made such a finding, we must remand for further findings. On remand, the trial court should determine whether Officer Jossi was exceeding the lawful speeds, either by exceeding the posted speed limit or by exceeding the speed that was required by any conditions that qualified as a special hazard under section 42–4–1101(2).

¶ 33 The order is vacated and the case is remanded as directed for the trial court to make further findings based on the existing record and reconsider whether Denver's immunity was waived here.

JUDGE TAUBMAN and JUDGE GABRIEL concur.