DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KEVIN STEWART,**
Appellant,

v.

**DEAN D. DRALEAUS, CHRISTOPHER REAGLE,** and **ROBIN VINCENT,**
Appellees.

Nos. 4D15-2320, 4D15-2321 and 4D15-2322

[July 26, 2017]

Consolidated appeals and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; James Midelis, Senior Judge; L.T. Case Nos. 562007CA001978, 562007CA003717 and 562008CA000556.

Diane H. Tutt of Conroy Simberg, Hollywood, for appellant.

Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, and William Zoeller of Schuler, Halvorson, Weisser & Zoeller, P.A., West Palm Beach, for appellee.

CIKLIN, J.

Kevin Stewart, the defendant below, timely appeals a final judgment in a personal injury action entered in favor of the three plaintiffs, Robin Vincent, Christopher Reagle, and Dean Draleaus. The action was based on a motorcycle accident in which the defendant is alleged to have hit the plaintiffs' motorcycles. The defendant argues the trial court erred in precluding three types of evidence: a witness's statement to an investigating police officer, alcohol consumption by the plaintiffs, and a motorcycle license violation by one of the plaintiffs. We agree on all three points, and we reverse and remand for a new trial.

## I. Facts

On the evening of the motorcycle accident, which occurred in 2006, the defendant was driving a Chevrolet Camaro. Draleaus and Reagle were each driving a motorcycle and Vincent was Reagle's passenger. At that time, Reagle had a temporary motorcycle license that did not permit

him to carry a passenger. Prior to the accident, the plaintiffs stopped at a restaurant and then at a bar. They were heading home when the accident occurred around 11:18 p.m.

In the proceedings below, liability was hotly contested and the defendant alleged comparative negligence. According to the plaintiffs' theory of the case, the defendant revved his engine at them and tried to race them. After pacing the motorcycles for a distance and swerving into their lane twice, the defendant hit Reagle's motorcycle (upon which Vincent was a passenger), which then ran into Draleaus's motorcycle, and then drove away. The plaintiffs survived the accident, but underwent medical treatment for significant injuries.

The defendant's version of events was dramatically different. The defendant admitted to revving his engine in response to the motorcycles, but he denied exceeding the speed limit or racing or hitting the motorcycles. He testified that he saw Reagle attempt to turn right but instead turn directly into Draleaus's path, which he opined, caused the motorcycles to collide and hit a curb and a telephone pole. The defendant said he pulled over and got out of his car, but then left after seeing that other people had stopped to render aid.

The independent witness testimony presented at trial was similarly inconsistent. One witness testified that the motorcycles and the defendant's Camaro were traveling at one hundred miles per hour and that the accident occurred while the vehicle and the two motorcycles were close to each another. Another witness, who was riding with the aforementioned witness, estimated that the vehicles were traveling fifty-five to sixty miles per hour and stated that the Camaro was nowhere near the motorcycles when one of the motorcycle's wheels began to wobble and crash.

Yet another witness ("minor accident witness") was involved in a fender bender shortly after the subject motorcycle accident. According to her deposition testimony, which was admitted at trial, she did not see the motorcycle accident because a truck was traveling in front of her, but she saw the motorcycles speeding and weaving in and out of traffic beforehand. When the truck turned onto an intersecting street, she saw three people laying on the road and on the sidewalk. She had to swerve to avoid them, at which point she hit a car that was pulled over to render aid to the plaintiffs.

Prior to trial, the parties moved in limine to obtain a ruling on the admissibility of a prior inconsistent statement of the minor accident

2

witness involved in her own accident, to the investigating law enforcement officer. In that statement she said she saw the motorcycle accident occur, and specifically that she saw one motorcycle move into the other motorcycle's lane and make contact with it. The parties also sought pre-trial rulings on the admissibility of evidence that the plaintiffs were drinking before the accident and that Reagle was violating a license restriction at the time of the accident by carrying a passenger. The trial court excluded all of the evidence. The jury ultimately found the defendant 55% at fault and Reagle 45% at fault and the trial court entered final judgment accordingly.

## II. Analysis

On appeal, the defendant argues that the evidentiary rulings were incorrect, since the excluded evidence was relevant, probative, and supported by expert testimony where necessary. We agree.

### A. Accident Report Privilege

First, we address the prior inconsistent statement of the witness who had been involved in her own separate and minor accident. The trial court excluded this testimony and evidence based on its interpretation of the accident report privilege. Therefore, this is a question of law subject to de novo review. *See Sottilaro v. Figueroa*, 86 So. 3d 505, 507-08 (Fla. 2d DCA 2012).

The accident report privilege serves to exclude from evidence statements made by a driver involved in an accident to a police officer for the purpose of creating a crash report for that accident. *McTevia v. Schrag*, 446 So. 2d 1183, 1184 (Fla. 4th DCA 1984). The privilege derives from section 316.066, Florida Statutes (2006), which under certain circumstances requires persons involved in an accident to provide a report to law enforcement:

> (1) The driver of a vehicle which is in any manner involved in a crash resulting in bodily injury to or death of any person or damage to any vehicle or other property in an apparent amount of at least $500 shall, within 10 days after the crash, forward a written report of such crash to the department or traffic records center. However, when the investigating officer has made a written report of the crash pursuant to paragraph (3)(a), no written report need be forwarded to the department or traffic records center by the driver.

3

. . . .

(3)(a) Every law enforcement officer who in the regular course of duty investigates a motor vehicle crash:

1. Which crash resulted in death or personal injury shall, within 10 days after completing the investigation, forward a written report of the crash to the department or traffic records center.

. . . .

(4) Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. *No such report or statement shall be used as evidence in any trial, civil or criminal.* However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person's privilege against self-incrimination is not violated. . . .

(Emphasis added).

"[T]he purpose of the statute is to clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty . . . ." *Brackin v. Boles*, 452 So. 2d 540, 544 (Fla. 1984). The assertion of the privilege is not limited to the declarant; it "extends to all persons within its ambit, those 'involved' in the accident[.]" *Hoctor ex rel. Hoctor v. Tucker*, 432 So. 2d 1352, 1353 (Fla. 5th DCA 1983).

This immunity, however, is not extended to witnesses as they have no obligation to provide such a statement. *McTevia*, 446 So. 2d at 1184-85. In *McTevia*, the McTevias were involved in a car accident with the defendant, Schrag. *Id.* at 1184. At the scene of the accident, the McTevias' friend, Epstein, told the investigating officer that he was following the McTevias in his car but did not witness the accident. *Id.* Two weeks later he went to the police station and told officers he had lied previously, that he saw the accident, and that Schrag was on the wrong side of the road at the time of the accident. *Id.*

4

At trial, the McTevias moved to preclude Epstein's on-scene statement on the basis of the accident report privilege under section 316.066(4). *Id.* The trial court ultimately ruled the statement to be admissible. *Id.* This court affirmed, explaining:

> This privilege inures only to those required to make the report. It does not apply to statements of other witnesses or persons who may volunteer information to the investigating officer. The privilege is constitutionally mandated because the statutes require a report under penalty of law and in certain instances the report could otherwise be in derogation of one's Fifth Amendment rights. From the foregoing lessons it appears that Epstein was not required by law to report to the investigating officer; he was therefore not involved in the accident within the meaning of Section 316.066(4), Florida Statutes (1981).

*Id.* at 1184-85 (internal citations omitted); *see also Sottilaro*, 86 So. 3d at 509-11 (where witnesses told officer that decedent was looking down at his phone and texting while crossing the highway, the witnesses' statements were not inadmissible on the basis of the accident report privilege because the witnesses were not involved in the accident and were not required to make the statements); *S.G.K. v. State*, 657 So. 2d 1246, 1248 (Fla. 1st DCA 1995) (noting that section 316.066 does not require witnesses to stay on the scene or report to officers). This court has further explained, "The test to be applied in determining whether the accident report privilege is applicable is whether the privilege against self-incrimination was violated by requiring the person involved in the accident to answer the questions posed." *Evans v. Hamilton*, 885 So. 2d 950, 950-51 (Fla. 4th DCA 2004).

In the proceedings below, the trial court determined that the fender bender and the motorcycle accident were not separate accidents, reasoning that the collisions were causally connected and were a "continuous chain of events." Since the minor accident witness was a driver of a vehicle "involved in an accident," the trial court reasoned that this privilege applied.

We find this conclusion to be erroneous. While it is true that the accidents were, in some fashion, related, the accidents were separate. Neither the minor accident witness nor the vehicle she struck collided with the plaintiffs, their motorcycles, or any of the debris from their accident. Further, the investigating officer who obtained the minor

5

accident witness's statement indicated in his proffered testimony that he was investigating only the motorcycle accident, not the minor accident witness's fender bender, and that the fender bender was memorialized in a separate accident report authored by a different officer. Any statements made to the other officer regarding the minor accident witness's own accident are privileged, but her Fifth Amendment rights were not implicated in her statements to the officer about the motorcycle accident. Consequently, the trial court erred in excluding evidence of her statements.

## B. Evidence of Alcohol Consumption

Second, we address the trial court's ruling excluding evidence of the plaintiffs' pre-accident alcohol consumption.

The evidence the defendant sought to introduce included (1) admissions by two of the plaintiffs that they had been drinking prior to the incident (the third incurred a head injury that left him unable to recall most of the day's events), (2) testimony of treating medical personnel and witnesses who smelled alcohol on the plaintiffs, and (3) testimony of an expert witness that even just one or two drinks may significantly impair perception and reaction in the operation of a motorcycle. The plaintiffs countered that evidence of impairment was speculative, as Reagle and Draleaus's blood had been drawn at 4:00 A.M. the morning after the accident and no alcohol was detected, nor was there any evidence of impairment such as slurred speech, bloodshot eyes, or unsteadiness on feet. The trial court focused on the fact that there was no evidence of retrograde extrapolation and that the blood alcohol tests were negative. It excluded the evidence, concluding that the potential prejudice to the plaintiffs outweighed the probative value of the proffered evidence.

We review the trial court's determination on the admissibility of the evidence for an abuse of discretion, which discretion is limited by the rules of evidence. *Pantoja v. State*, 59 So. 3d 1092, 1095 (Fla. 2011).

Relevant evidence is evidence tending to prove or disprove a material fact and is generally admissible. §§ 90.401, 90.402, Fla. Stat. (2013). "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2013).

In weighing the probative value against the unfair prejudice,

6

> it is proper for the court to consider the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.

*Jones v. Alayon,* 162 So. 3d 360, 365 (Fla. 4th DCA 2015) (quoting *Johnson v. State,* 40 So. 3d 883, 886 (Fla. 4th DCA 2010)).

This court has recognized the inflammatory effects of evidence of a party's alcohol use in the context of an action arising from a car accident, and has held them inadmissible as unduly prejudicial where liability is admitted. *See Neering v. Johnson,* 390 So. 2d 742, 744 (Fla. 4th DCA 1980). However, even when a defendant admits liability, where comparative negligence is alleged, "the trier of fact must hear the 'totality of fault' of each side," i.e., the specific acts of negligence of each party. *Lenhart v. Basora,* 100 So. 3d 1177, 1179 (Fla. 4th DCA 2012).

Regardless, a plaintiff driver's potential impairment is probative of whether he caused or contributed to an accident:

> Whether or not a person is under the influence of intoxicating liquor to the extent that his or her normal faculties are impaired is a question of fact and should be determined by the jury when there is substantial evidence submitted on that question.

*Seltzer v. Grine,* 79 So. 2d 688, 689 (Fla. 1955); *see also Flint v. State,* 117 So. 2d 552, 556 (Fla. 2d DCA 1960) (holding evidence of appellant's consumption of alcohol prior to the accident was properly admitted in trial for manslaughter by culpable negligence in operation of an automobile because "ordinarily, persons under the influence of intoxicants to any considerable degree, though not actually intoxicated or drunk, are more apt to be heedless, reckless, and daring than when free from such influence" (quoting *Cannon v. State,* 107 So. 360, 362 (Fla. 1926))).

Here, the evidence of alcohol consumption on the evening of the accident was material to the issue of comparative negligence and was not speculative. Reagle admitted that he had two drinks between 7:30 and 10:30, which means that he could have been drinking forty-eight minutes before the accident occurred at 11:18. Reagle's motorcycle passenger, Vincent, admitted she had been drinking, and a witness

7

testified that she smelled alcohol on her. A responding officer smelled alcohol on Draleaus. Finally, the expert testified that even small quantities of alcohol can impair a motorcycle operator's perception and reaction.

This evidence conclusively established that at least some of the plaintiffs were drinking prior to the accident and therefore properly raised the issue as to whether the alcohol consumption was a contributing factor in the accident, and thus whether plaintiffs were under the influence to the extent that their faculties were impaired. This was a question of fact for the jury to consider.

Moreover, the weight of the evidence tending to prove the plaintiffs were not impaired against the weight of the evidence of their alcohol consumption is a factual determination reserved for the jury. *See Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981), *aff'd*, 457 U.S. 31 (1982) ("It is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.").

In light of our determination that the trial court erred in excluding the evidence of alcohol consumption, we direct that on remand, the defendant should be permitted to pursue his defense under section 768.36, Florida Statutes (2006), which provides in pertinent part:

> (2) In any civil action, a plaintiff may not recover any damages for loss or injury to his or her person or property if the trier of fact finds that, at the time the plaintiff was injured:
>
> (a) The plaintiff was under the influence of any alcoholic beverage or drug to the extent that the plaintiff's normal faculties were impaired or the plaintiff had a blood or breath alcohol level of 0.08 percent or higher; and
>
> (b) As a result of the influence of such alcoholic beverage or drug the plaintiff was more than 50 percent at fault for his or her own harm.

According to the plain language of the statute, it is up to the "trier of fact" to determine whether the plaintiffs' normal faculties were impaired and whether they were more than fifty percent at fault for their injuries. Since Stewart should be allowed to present evidence on Reagle and Draleaus's alcohol consumption, it follows that he should be able to present his section 768.36 defense with respect to these two plaintiffs.

8

*C. Evidence of License Violation*

Third, we address the trial court's exclusion of evidence that, at the time of the accident, Reagle had not taken the required examination and thus possessed only a temporary motorcycle license that did not allow him to carry passengers.[1] The trial court ruled that the evidence was not admissible because Reagle's mere failure to take the requisite test and obtain his permanent motorcycle license did not indicate negligence in the subject accident, and thus the violation was irrelevant.

We review the trial court's ruling on the admissibility of the evidence for an abuse of discretion. *Pantoja,* 59 So. 3d at 1095.

In precluding the evidence of the license restriction violation, the trial court relied on *Brackin,* 452 So. 2d at 542, in which the Florida Supreme Court concluded that "a violation of the driver's license law is admissible if relevant to the issues in a cause" and further explained:

> Evidence is relevant if it tends to prove or disprove a material fact at issue. Hence a person's violating a traffic regulation is admissible evidence only if it tends to prove that that person has negligently operated an automobile. *Relevancy is usually inherently established when the traffic regulation which was violated concerns the manner in which an automobile was operated.* Relevancy is not so easily established when the traffic regulation which was violated concerns a licensing requirement.
>
> The vast majority of jurisdictions hold that a violation of a driver's license law is not evidence of negligence in the absence of some causal connection between the violation and the injury. *See* Annot., 29 A.L.R.2d 963 (1953 & Supp. 1981). This requirement of a causal connection for evidence of a violation to be admissible should not be confused with the proximate cause element of a tort action for negligence. The first is a determination of law made by a trial judge in deciding whether a person's violating a driver's license regulation is relevant. Whether such a violation is a

---

[1] Further, Vincent knew of the restriction, since Reagle was pulled over for weaving in and out of traffic while she was riding as his passenger several days before the accident, and the law enforcement officer made her get off of the motorcycle due to Reagle's license restriction.

proximate cause of any damage or injuries is a finding of fact to be made by the jury.

Thus the real issue in this case is whether the trial judge erred in deciding as a matter of law that Brackin's violating the restriction on his license was not relevant to the manner in which he was operating the automobile. In some situations the violation of such a restriction may be relevant to show the driver's inexperience and incompetence in handling an automobile. *See Dorsett v. Dion.* In this case, however, Brackin's experience and competence were not placed in issue. Moreover, the accident took place only a few days before Brackin's seventeenth birthday and he had been driving for almost two years. Boles' case did not rest upon Brackin's inexperience, but rather upon the allegation that Brackin was exceeding the speed limit. We therefore find that the trial court was correct in ruling that Brackin's violation of [the statute requiring accompaniment by licensed adult] was not relevant and therefore was inadmissible.

*Id.* at 545 (emphasis added).

We find that the trial court erred when it excluded this evidence. Reagle admitted that carrying a passenger can change the unique dynamics of a motorcycle, i.e., the manner in which the motorcycle is operated. Since "[r]elevancy is usually inherently established when the traffic regulation which was violated concerns the manner in which an automobile was operated," *id.*, we find that—in this particular situation— the motorcycle license violation was relevant to the case at hand. The evidence should have been presented to the jury for a determination of whether the violation proximately caused any of the plaintiffs' injuries.

### III.   Conclusion

Because the trial court erred in excluding the witness statement and erred in excluding relevant evidence of alcohol consumption and a license violation, we reverse and remand for a new trial. However, with particular respect to the evidence of alcohol consumption and the license violation, we caution that "[s]uch evidence, to be admissible, should be demonstrated to relate to the relevant issues and not be used solely to create prejudice in the minds of the jurors." *See Botte v. Pomeroy*, 497 So. 2d 1275, 1279 (Fla. 4th DCA 1986).

*Reversed and remanded.*

10

GROSS and MAY, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***