DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MASTEC NORTH AMERICA, INC.** and **ROBERT W. DUMAS,**
Appellants,

v.

**KATHLEEN MORAKIS,** as Limited Guardian of the Person and Property
of **MANUEL PEREZ GARCIA,** Incapacitated,
Appellee.

No. 4D18-1321

[October 2, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 50-2013-CA-015176-XXXX-MB.

Alina Alonso Rodriguez and Wendy F. Lumish of Bowman and Brooke LLP, Miami; and Brian D. Equi and Francis E. Pierce, IV of Goldberg Segalla, LLP, Orlando, for appellants.

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach; Steven Kuveikis of Steven Kuveikis, P.A., Jupiter; and John J. Wilke of The Law Office of John J. Wilke, Boca Raton, for appellee.

CIKLIN, J.

A young man traveling on a bicycle ("the plaintiff") was struck from behind by a van and suffered significant injuries. His guardian brought a negligence suit against the driver of the van and the driver's employer ("the defendants"). Based on a Florida statute barring relief to a plaintiff whose alcohol impairment causes him to be more than 50% at fault for his injuries, the defense introduced evidence of the plaintiff's impairment and sought a jury instruction concerning this defense. Nonetheless, the trial court directed a verdict in the *plaintiff's* favor on the statutory defense and instructed the jury that the plaintiff's impairment was not a cause of the accident or the plaintiff's injuries. We find the trial court erred and we reverse and remand for a new trial.

The evidence at trial revealed the following. One morning, Robert Dumas, a driver for MasTec of North America ("the driver"), left his house

shortly before 6:00 a.m. to begin his commute to work. He was driving a company van and because it was dark out, had engaged its low beam lights. The driver was traveling north on Military Trail. There was a sidewalk next to the road. The driver shifted from the center lane to the right-hand lane and traveled another 200 yards. Suddenly, he saw a bicycle on the road in front of his van toward the passenger side. The plaintiff was traveling on the bicycle in a northward direction. The driver did not see any reflectors on the bicycle. The driver swerved to the left to avoid the plaintiff but to no avail. The right front headlight of the van struck the rear tire of the bicycle, and the man suffered profound injuries.

An investigation revealed that the plaintiff was wearing non-reflective clothing as well as dark cowboy boots with a 1¼ inch heel that would have covered the bicycle pedals' reflectors. The bicycle did not have a headlight or taillight. The bicycle had a rear reflector light but there was conflicting testimony as to whether it was properly positioned. The plaintiff had a blood alcohol concentration ("BAC") of .23. He was traveling on Military Trail, a major six-lane road, about four feet from the edge of the road. The street light "across from where the crash occurred" was "not functioning properly," and there were "prolonged period[s] of time" when the light was not on.

One of the defense experts testified that the operation of a bicycle requires coordination. Bicyclists must "divide their attention between physical and mental tasks." Like drivers of automobiles, bicyclists must also "check . . . everywhere for lane positions, also to see if there's anything else that could be coming into your path of travel."

A defense expert testified regarding the correlation between an increased BAC and impairment of normal faculties such as the ability to walk and talk, process information, and perceive, appreciate, and react to emergency situations. He described the signs of impairment associated with different ranges of BAC. BACs below .08 would lower inhibitions and negatively affect motor performance. Persons with less alcohol tolerance might exhibit slurred speech and staggering. Reaction time is delayed. With BACs between .08 and .19, these signs would be exhibited "in a greater degree." Loss of judgment would increase, and the ability to operate a bicycle would be negatively impacted. Higher BACs, such as the plaintiff's, would make it even "more difficult to operate a bicycle." A person with a .23 BAC could exhibit confusion, disorientation, dizziness, distorted vision, and lack of coordination. The toxicologist further testified that lowered inhibitions caused by an increased BAC can result in risky behavior. He opined that based on the plaintiff's BAC level, his balance, judgment, decision making, perceptions, and reaction time would have

been affected and he likely would have experienced dizziness and lack of coordination.

At the close of evidence, the trial court granted the plaintiff's motion for directed verdict on the statutory affirmative defense related to the plaintiff's impairment. But the court confirmed that defense counsel could still assert comparative fault: "[T]here's a lot to argue about comparative fault . . . There was no light, the dark clothing, the position of the . . . bicycle, all of those are still fair game in comparative fault." The court made it clear, however, that defense counsel could not argue "that any of that occurred or happened due to" the plaintiff's intoxication, finding that there was "no evidence to show that the intoxication led to him wearing the dark clothing, not having the light on the back of the bike."

Over defense objection, the jury was specifically instructed that the plaintiff's "alcohol consumption did not cause or contribute to the occurrence of this accident or [the plaintiff's] injuries." But it was also instructed that it must decide "whether [the plaintiff] was negligent and, if so, whether that negligence was a contributing legal cause of his injuries and damages."

The jury returned a verdict for the plaintiff but found he was 40% at fault.

On appeal, the defendants argue that there was evidence that the plaintiff's BAC level contributed to the accident, and thus the trial court erred in directing a verdict on their statutory defense. They point to the evidence of the plaintiff's comparative negligence and the expert witnesses' testimony as to what faculties are necessary to operate a bicycle and how these faculties and others would be affected by a .23 BAC. Claiming that the trial court erroneously gutted their statutory defense, the defendants seek a new trial on liability and apportionment of damages.

"The standard of review on appeal of the trial court's ruling on a motion for directed verdict is *de novo*." *Young v. Becker & Poliakoff, P.A.*, 88 So. 3d 1002, 1011 (Fla. 4th DCA 2012) (quoting *Martin Cty. v. Polivka Paving, Inc.*, 44 So. 3d 126, 131 (Fla. 4th DCA 2010)). "A motion for directed verdict should not be granted unless the trial court, after viewing the evidence in the light most favorable to the non-moving party, determines that no reasonable jury could render a verdict for the non-moving party." *Houghton v. Bond*, 680 So. 2d 514, 522 (Fla. 1st DCA 1996).

To survive a motion for directed verdict that is directed to a comparative negligence defense, the evidence does not need to be conclusive that a

plaintiff's action or inaction caused the accident. It is enough that there is evidence from which the jury can make the inference. *See, e.g., Howell v. Winkle*, 866 So. 2d 192, 195-96 (Fla. 1st DCA 2004); *Petroleum Carrier Corp. v. Gates*, 330 So. 2d 751, 752 (Fla. 1st DCA 1976). Additionally: "Motions for directed verdict are rarely appropriate in negligence cases. Where there is evidence which supports an inference of comparative fault on the part of the plaintiff, the issue of comparative negligence should be submitted to the jury." *Howell*, 866 So. 2d at 195 (citation omitted).

Upon the plaintiff's motion, the trial court directed a verdict on the defendants' affirmative defense, which was based on section 768.36, Florida Statutes (2011). The statute provides in pertinent part:

> (2) In any civil action, a plaintiff may not recover any damages for loss or injury to his or her person or property if the trier of fact finds that, at the time the plaintiff was injured:
>
> (a) The plaintiff was under the influence of any alcoholic beverage or drug to the extent that the plaintiff's normal faculties were impaired or the plaintiff had a blood or breath alcohol level of 0.08 percent or higher; and
>
> (b) As a result of the influence of such alcoholic beverage or drug the plaintiff was more than 50 percent at fault for his or her own harm.

§ 768.36(2), Fla. Stat.

In a case involving section 768.36, this court emphasized that the trier of fact rather than the judge should apportion fault. *See Pearce v. Deschesne*, 932 So. 2d 640, 641 (Fla. 4th DCA 2006). We elaborated as follows:

> When apportionment of fault between the plaintiff and a defendant under comparative negligence is a contested issue, it is the trier of fact that must do the apportioning, not the judge deciding a legal issue. As one court explained:
>
>> "Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency, particularly in cases where the plaintiff's own negligence is in issue. We do not here express an opinion as to whether a directed verdict should *ever* be granted where

4

> the negligence of both parties is at issue. We do, however, believe that such cases will be extremely rare."

*Id.* at 642 (quoting *Petroleum Carrier Corp.*, 330 So. 2d at 752). This court further observed that "only in the rare case when there is simply no factual dispute as to apportionment of negligence, does the trial judge have the authority to make a ruling on the issue as a matter of law." *Id.*

At trial, the plaintiff stipulated that his BAC was .23, and the trial court entered a directed verdict for the defense on subsection (2)(a) of the statute. Thus, the only issue with respect to the directed verdict is whether the trial court erred in entering a directed verdict for the plaintiff on subsection (2)(b) of the statute.

The parties cite to numerous cases on appeal in support of their positions, but most of the cases do not provide us with meaningful guidance. However, one case relied on by the defendants, although factually distinguishable, is helpful to our analysis as it illustrates that the question of whether a plaintiff's intoxication contributed to an accident is generally an exclusive jury issue.

In *Stewart v. Draleaus*, 226 So. 3d 990, 992-93 (Fla. 4th DCA 2017), the defendant was driving a Camaro; the three plaintiffs were traveling on two motorcycles. Prior to the crash, the plaintiffs had stopped at a restaurant and a bar. *Id.* at 993. While the plaintiffs claimed that the defendant revved his engine and swerved into their lane, striking one of the motorcycles, the defendant denied exceeding the speed limit or striking the motorcycles. *Id.* The defendant claimed that one of the plaintiffs turned directly into another plaintiff's path, which caused the motorcycles to collide and hit the curb and a telephone pole. *Id.*

The defendant alleged comparative negligence and sought to introduce evidence that two of the plaintiffs admitted they had been drinking prior to the accident, and that treating medical personnel and witnesses smelled alcohol on the plaintiffs. *Id.* at 993, 995. He also sought to elicit expert opinion testimony that just one or two drinks may significantly impair perception and reaction in the operation of a motorcycle. *Id.* at 995-96.

The plaintiffs argued that the evidence of impairment was speculative, as the plaintiffs' blood had been drawn almost five hours after the accident and no alcohol was detected nor was there evidence of impairment such as slurred speech and the like. *Id.* at 996. The trial court focused on the lack of evidence of retrograde extrapolation and that the blood alcohol tests were negative. *Id.* The court excluded the evidence, finding that the

potential prejudice outweighed any probative value. *Id.*

On appeal, this court agreed with the defendant and held that the trial court erred in excluding the evidence. *Id.* at 996-97. The court first recognized that evidence of alcohol use can be "inflammatory" in the context of a suit arising from a car accident, and thus such evidence has been held to be "inadmissible as unduly prejudicial where liability is admitted." *Id.* at 996. But the court also recognized that even when a defendant admits liability, where comparative negligence is alleged, the trier of fact must hear about the specific acts of negligence of each party. *Id.* The court further recognized that "a plaintiff driver's potential impairment is probative of whether he caused or contributed to an accident." *Id.* The court reasoned that the evidence of alcohol consumption was material and not speculative and that it conclusively established that some of the plaintiffs were drinking prior to the accident. *Id.* at 996-97. The court opined that the evidence "therefore properly raised the issue [of] whether the alcohol consumption was a contributing factor in the accident, and thus whether plaintiffs were under the influence to the extent that their faculties were impaired," a question of fact for the jury. *Id.* at 997. Finally, this court directed that on remand, the defendant should be permitted to pursue his section 768.36 defense:

> According to the plain language of the statute, it is up to the "trier of fact" to determine whether the plaintiffs' normal faculties were impaired and whether they were more than fifty percent at fault for their injuries. Since Stewart should be allowed to present evidence on [the plaintiffs'] alcohol consumption, it follows that he should be able to present his section 768.36 defense with respect to these two plaintiffs.

*Id.*

We recognize that *Stewart* is factually distinguishable and that our court was addressing the exclusion of evidence that was relevant to establish that the plaintiffs' normal faculties were impaired. Here, it was undisputed that the plaintiff's BAC exceeded the legal limit significantly, and the evidence of the plaintiff's BAC was put before the jury. Even though the opinion is factually distinguishable, its reasoning supports the conclusion that the trial court here should not have directed a verdict on the statutory defense. Here, as in *Stewart,* there was evidence of impairment and there was evidence of comparative negligence. In the light most favorable to the defendants, the plaintiff was riding his bicycle in the dark in the six-lane roadway—and not on the adjacent sidewalk—and failed to wear reflective clothing or equip his bicycle with proper lighting

6

and reflectors. Additionally, he did all this while statutorily impaired. Under these circumstances, the evidence of his BAC and impairment "properly raised the issue [of] whether the alcohol consumption was a contributing factor in the accident," and the trial court erred in directing a verdict on the statutory defense.

The defendants also argue that the trial court erred in excluding expert opinion testimony related to the effects of alcohol on a person's ability to operate a vehicle, the trial court ruling that it was cumulative to another expert's testimony. We review the trial court's ruling for an abuse of discretion. *See Nationwide Mut. Fire Ins. Co. v. Bruscarino*, 982 So. 2d 753, 754 (Fla. 4th DCA 2008). Unfortunately, the defense failed to proffer the additional expert testimony it sought to introduce and without a proffer, it is impossible for us to entertain the defendants' claim that the expert's testimony would not have been cumulative. *See Holmes v. Redland Constr. Co.*, 557 So. 2d 911, 912 (Fla. 3d DCA 1990). We find the remaining arguments the defendants make regarding the exclusion of expert opinion testimony do not merit reversal.

Finally, the defendants contend that the trial court erred in allowing the plaintiff's accident reconstruction expert to give testimony that could have been interpreted as related to whether the plaintiff was impaired prior to or at the time of impact. Specifically, the plaintiff's expert opined that if the plaintiff had been impaired, he would have been "all over the roadway maybe up on the sidewalk jumping the curbs or something like that or if it was bad enough he would have been completely incapable of riding the bicycle and laying on the ground next to his bicycle in the road." The defendants argue this testimony did not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

We review for an abuse of discretion. *See Gray v. Russell Corp.*, 681 So. 2d 310, 316 (Fla. 1st DCA 1996). The expert's opinion was improper under *Daubert.* Apparently, the plaintiff's expert based his testimony on the driver's deposition and perhaps to some extent on his investigation of the plaintiff's position after impact. But this expert could not say for how long the plaintiff was positioned that way, how he got to be in that position, where he came from, and what he was doing before the moment of impact. Thus, we find, he did not have sufficient information to opine that the plaintiff's normal faculties were not impaired.

Based on the foregoing, we reverse and remand for new trial on liability

7

and apportionment of damages.[1]

*Reversed and remanded for new trial on liability and apportionment of damages.*

WARNER, J., and SINGHAL, RAAG, Associate Judge, concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] Because the error relates to the plaintiff's comparative fault and the plaintiff has not cross-appealed and raised any error related to damages, or made it apparent that justice requires a new trial on damages, we see no need for the new trial to extend to the amount and type of damages. *See Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1263-64 (Fla. 1996); *Petroleum Carrier Corp.*, 330 So. 2d at 752-53.