NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VERANDAH DEVELOPMENT, LLC,               )
                                         )
          Appellant,                     )
                                         )
v.                                       )          Case No. 2D15-2250
                                         )
VINCENT GUALTIERI and BETH               )
GUALTIERI,                               )
                                         )
          Appellees.                     )
_____)

Opinion filed February 17, 2016.

Appeal from the Circuit Court for Lee
County; Michael T. McHugh, Judge.

Theodore L. Tripp, Jr., and Justin B.
Mazzara of Hahn, Loeser, & Parks, LLP,
Fort Myers, for Appellant.

Kelsey L. Hazzard and William J. Hazzard
of Coleman, Hazzard, & Taylor, P.A.,
Naples, for Appellees.


CASE, JAMES R., Associate Senior Judge.

          Verandah Development, LLC, appeals the final judgment entered in favor

of Vincent and Beth Gualtieri.  We affirm the trial court's finding that Verandah was not

entitled to amend the refund policy under its agreement with the Gualtieris.  However,

we reverse the final judgment because the Gualtieris did not establish that they were entitled to an immediate refund.

## I.    Background

In January 2006, the Gualtieris applied to join the golf club owned by Verandah Development, LLC, in the residential development where they resided.  When they applied they signed and submitted a Membership Agreement.  Under the terms of the Agreement, Verandah had the absolute discretion to accept or reject the Gualtieris as members.  Paragraph two of the Agreement provided in pertinent part:

> My membership privileges will be subject to the terms and conditions of the Club Membership Plan and Rules and Regulations, which I acknowledge receipt of (the "Membership Plan").  I hereby acknowledge that my membership in the Club is not an investment in the Club, nor does it provide an equity or ownership interest in the Club or the Club Facilities, which are owned solely by [Verandah]. Membership in the Club does not confer upon me a vested or prescriptive right or easement to use the Club Facilities. [Verandah] and the Club reserve the right, in their sole and absolute discretion, to restrict or to otherwise reserve the Club Facilities for maintenance, tournament play and other special events from time to time.

Paragraph seven further provided:

> I hereby acknowledge receipt of Verandah Club Membership Plan and the Rules and Regulations and agree to be bound by the terms and conditions thereof as the same may be amended from time to time by the Club or [Verandah] and irrevocably agree to fully substitute the membership privileges acquired pursuant to the Club Membership Plan and Rules and Regulations for any present or prior rights in or to use of the Club Facilities.

The Gualtieris were required to submit a $40,000 deposit with their application.  Had the Gualtieris' application been rejected, the deposit would be immediately refunded.  However, because they were accepted as members, their

deposit was refundable under Verandah's refund policy for resigned members. The Agreement provided:

> Members who join the club after 180 days of the date of their real estate contract and later resign their membership will be refunded their initiation deposit previously paid subject to a "one in, one out" refund policy. Under the refund policy, the resigned membership will be placed on a resigned waiting list for that membership category. The Club will pay a refund of the initiation deposit to the first person on the resigned list upon every sale of a membership category.[1]

In 2006, when the Gualtieris joined the Club, the Membership Plan contained a similar refund policy.[2] In 2009, Verandah amended the Membership Plan to provide that the Club would issue refunds to one resigned member for every three new memberships issued in a given category. The Club issued an email notifying its members of the amendment after it became effective. It is undisputed that the Gualtieris did not lodge an objection to the policy at the time it was implemented. In 2014, the Gualtieris resigned their membership. After Verandah informed the Gualtieris that they would be refunded under the amended "three in, one out" policy they filed suit, seeking a refund of their deposit. Verandah has been issuing refunds under the amended policy during the pendency of this litigation.

---

[1]The Agreement also provided that "[m]embers who joined the club within 180 days of the date of their real estate contract and later resign[ed] their membership will be refunded their initiation deposit previously paid within 30 days after resignation, without having to be placed on any waiting list to receive their refund ('instant refundability')." The parties are in agreement that the Gualtieris joined the club more than 180 days of the date of their real estate contract.

[2]The Membership Plan provided that refunds would be issued to resigned members on a "two in, one out" basis unless that category of membership was at full capacity, in which case, Memberships would be issued on a "one in, one out" basis.

- 3 -

The parties filed dueling motions for summary judgment. The Gualtieris argued that the amended refund policy constituted a breach of Agreement. Verandah's motion argued that under the Agreement, it was authorized to unilaterally amend the refund policy. The trial court entered a summary final judgment in favor of the Gualtieris, ordering that Verandah immediately pay $40,000 to them.[3]

**II.     Analysis**

Verandah raises a number of issues on appeal, but we write to address two of them.[4] Verandah argues that the trial court erred in granting summary judgment to the Gualtieris because Verandah expressly reserved the right to amend the Membership Plan, including the refund policy. It also argued that the trial court erred in granting summary judgment in favor of the Gualtieris because they did not establish that they were entitled to an immediate payment of the $40,000 membership deposit. We disagree that Verandah was authorized under the Agreement to amend the refund policy. However, we reverse because there is no record evidence establishing that the Gualtieris were entitled to an immediate refund.

The trial court's interpretation of a contract is a matter of law subject to de novo review. Syvrud v. Today Real Estate, Inc., 858 So. 2d 1125, 1129 (Fla. 2d DCA 2003). We also apply a de novo review to the trial court's decision to grant summary judgment. Id. "It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or

---

[3]Verandah also filed a counterclaim on which the trial court granted summary judgment in favor of the Gualtieris.

[4]We find no merit in the remaining issues raised by Verandah and decline to comment further on them.

so much of it as is referred to, is to be interpreted as part of the writing." Avatar Props., Inc. v. Greetham, 27 So. 3d 764, 766 (Fla. 2d DCA 2010) (quoting OBS Co. v. Pace Constr. Corp., 558 So. 2d 404, 406 (Fla. 1990)).  In interpreting the Membership Agreement and Membership Plan, we first turn to the plain language to discern the parties' intent.  See Hatadis v. Achieva Credit Union, 159 So. 3d 256, 259 (Fla. 2d DCA 2015).  "The goal in construing the contract language is to reach a reasonable interpretation of the entire agreement in order to accomplish its stated purpose and meaning."  Id.  "[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner."  Id. (quoting BKD Twenty-One Mgmt. Co. v. Delsordo, 127 So. 3d 527, 530 (Fla. 4th DCA 2012)).

**A.      Verandah was not authorized to amend the refund provision in the Membership Agreement.**

Verandah relies on paragraph seven of the Membership Agreement in arguing that the contract authorized it to amend the refund policy.  That paragraph provides in pertinent part that the Gualtieris agreed

> to be bound by the terms and conditions [of the Membership
> Plan and Rules and Regulations] as the same may be
> amended from time to time by the Club or [Verandah] and
> irrevocably agree to fully substitute the membership
> privileges acquired pursuant to the Club Membership Plan
> and Rules and Regulations for any present or prior rights in
> or to use of the Club Facilities.

(Emphasis added.)  Verandah also argues that under the Agreement, the Gualtieris had no vested rights whatsoever.  It relies on the following provision from the Membership Agreement:

> Membership in the Club does not confer upon me a vested or prescriptive right or easement <u>to use the Club Facilities</u>. [Verandah] and the Club reserve the right, in their sole and absolute discretion, to restrict or to otherwise reserve the Club Facilities for maintenance, tournament play and other special events from time to time.

(Emphasis added.)

We reject these arguments and are persuaded by the reasoning in <u>Feldkamp v. Long Bay Partners, LLC</u>, 773 F. Supp. 2d 1273, 1282 (M.D. Fla. 2011). In <u>Feldkamp</u>, a golf club suspended its refund policy and the plaintiff members filed suit seeking a refund of their deposit. The golf club in that case had a similar arrangement to Verandah's club—potential members submitted a membership application and deposit. The membership application provided that members agreed to be bound by the Membership Plan and the Rules and Regulations "as the same may be amended from time to time by the Club . . . and irrevocably agree[d] to fully substitute the membership privileges acquired pursuant to the Club Rules and Regulations for any present or prior rights in or to use of the Club Facilities." <u>Id.</u> at 1281. The club, like Verandah, argued that it was entitled to amend the refund policy under this provision. The court rejected this argument, reasoning that the amendment rights of the club only pertained to "membership priviliges ('rights in or to use of the Club Facilities') not the substantive right to a refund." <u>Id.</u> at 1282.

Contrary to Verandah's arguments, these provisions only pertained to the Gualtieris' rights in or to use the Club Facilities—the Gualtieris agreed to unilateral amendments by Verandah pertaining to "any present or prior rights in or to use of the Club Facilities" and agreed that their membership did not confer a vested right "to use

the Club Facilities."  This language did not permit Verandah to amend the refund policy contained in the Membership Agreement.  Rather, as in Feldkamp,

> "[t]he only reasonable interpretation of [these] provision[s] is that [the Club] had the unilateral right to make changes which would affect the prior rights in or use of the Club Facilities (*e.g.,* changes related to membership dues, Club operations and services, guest and family privileges, sale of the Club, etc.).  Thus, the refund obligation remained a vested contractual right, not subject to amendment by the Club.

Id. (footnote omitted).

Verandah argues that Feldkamp is distinguishable because the golf club in that case attempted to fully suspend the refund policy whereas, in this case, Verandah has simply changed its administration of issuing refunds by adopting the "three in, one out" policy.  We are unpersuaded by this argument because the severity of the golf club's breach in Feldkamp is unrelated to the court's de novo interpretation of the contract.

Verandah also cites Hamlet Country Club, Inc. v. Allen, 622 So. 2d 1081 (Fla. 4th DCA 1993), in support of its arguments that it was authorized to amend the refund provision and that the Gualtieris had no vested rights under the Agreement.  In Hamlet, a golf club required a deposit from members for admission.  Id. at 1082.  The club's bylaws had conflicting provisions as to whether a member could redeem their membership certificate when they resigned from the club.  Id.  One provision provided that redemption was available only if the club had at least 365 members.  Id.  Some members contended that another provision allowed for redemption regardless of how many members were in the club.  Id.  The club amended the bylaws to explicitly state that redemption was only available if the club had 365 members.  Id.  The Fourth District

held that the amendment was authorized because the right of redemption was governed by and subject to the bylaws. Id. at 1083.

However, Hamlet is distinguishable from this case. In Hamlet, the redemption rights were contained in the bylaws that were subject to amendment. The Hamlet court relied on Orchard Ridge Country Club, Inc. v. Schrey, 470 N.E.2d 780, 783 (Ind. Ct. App. 1984), where the court found the rights at stake were "qualified from the outset." The Hamlet court also distinguished First Florida Bank, N.A. v. Financial Transaction Systems, Inc., 522 So. 2d 891, 892 (Fla. 2d DCA 1988), where this court reaffirmed the well-established principle that "a corporation is prohibited from amending its bylaws so as to impair a member's contractual right." The Hamlet court reasoned: "We find [First Florida Bank] distinguishable because the corporation was attempting to change contractual rights emanating from its charter by altering the bylaws. In the present case the alleged vested rights are all contained in the bylaws which were subject to amendment." Hamlet, 622 So. 2d at 1083. Accordingly, we find that Verandah's amendment to the refund policy was impermissible under the Agreement.

**B.      Summary judgment was improper because the Gualtieris did not establish their entitlement to an immediate refund.**

While we agree with the trial court that Verandah was not authorized under the Agreement to amend the refund policy, the record before this court does not establish that the Gualtieris were entitled to an immediate refund of their deposit. The only evidence in the record as to where the Gualtieris stood on the resignation list is the affidavit of the club's general manager, Kenneth Congdon II. Mr. Congdon's affidavit provided that the Gualtieris were twenty-ninth on the list as of March 2015.

The Gualtieris argue that they were entitled to an immediate refund because Verandah breached the Agreement by administering the resignation list under the amended "three in, one out" policy as opposed to the original "one in, one out" policy. We recognize that "[a] material breach by one party may be considered a discharge of the other party's obligations thereunder." Nacoochee Corp. v. Pickett, 948 So. 2d 26, 30 (Fla. 1st DCA 2006). However, an immediate refund places the Gualtieris in a better position than they would have been if the "one in, one out" policy had been honored.

> [T]he purpose of damages is to restore an injured party to the same position that he would have been in had the other party not breached the contract. In restoring the injured party to the "same position," he "is not entitled to be placed, because of that breach, in a position better than that which he would have occupied had the contract been performed."

Lindon v. Dalton Hotel Corp., 49 So. 3d 299, 305 (Fla. 5th DCA 2010) ((citations omitted) (quoting Madison Fund, Inc. v. Charter Co., 427 F. Supp. 597, 608 (S.D.N.Y. 1977)). The Gualtieris will not suffer damages until the point in time when they would have been due for a refund under the original refund policy. Verandah's refund policy amendment and communications with the Gualtieris regarding their refund are best characterized as anticipatory repudiations. See Alvarez v. Rendon, 953 So. 2d 702, 709 (Fla. 5th DCA 2007) ("An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future."). Accordingly, we reverse the judgment insofar as it awards immediate damages to the Gualtieris and remand to the circuit court for further proceedings to determine when the Gualtieris would be entitled to a refund.

Affirmed in part, reversed in part, and remanded.

VILLANTI, C.J., and LaROSE, J., Concur.