IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

February 23, 2018


ASSET MANAGEMENT HOLDINGS, )
LLC, a/k/a AMH USA, LLC; and )
THIERRY CASSAGNOL, )
                                    )
       Appellants, )
                                    )
v. )        Case Nos. 2D16-341
                                    )                 2D16-3599
ASSETS RECOVERY CENTER )  CONSOLIDATED
INVESTMENTS, LLC; 19-ASSET )
MANAGEMENT HOLDINGS, LLC; MIA )
FUNDING, LLC; 17-ASSET )
MANAGEMENT HOLDING, LLC; )
16-ASSET MANAGEMENT HOLDINGS, )
LLC; 14-TP FUNDING, LLC; 12 ASSET )
MANAGEMENT HOLDINGS, LLC; 11 )
ASSET MANAGEMENT HOLDINGS, LLC; )
10-ASSET MANAGEMENT HOLDINGS, )
LLC; 9-COMP LOAN, LLC; )
6-MISPROPERTIES, LLC; )
5-HOMECOM.LOANS, LLC; )
4-TRADERS TRUST, LLC; 21 ASSET )
MANAGEMENT HOLDINGS, LLC; )
3-STUDENT LOAN, LLC; 2 BANKING )
ONE FUNDING, LLC; 1, M, LLC, 1 M, )
INC.; JOHN OLSEN; and DANIEL )
COOSEMANS, )
                                    )
       Appellees. )
_____ )

BY ORDER OF THE COURT:

        The plaintiff entities' October 31, 2017, motion for rehearing is denied.

The plaintiff entities' October 31, 2017, motion for clarification is granted to the extent

that the prior opinion dated October 18, 2017, is withdrawn and the attached opinion is

issued in its place.  No further motions for rehearing will be entertained.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ASSET MANAGEMENT HOLDINGS, )
LLC, a/k/a AMH USA, LLC; and )
THIERRY CASSAGNOL, )
)
Appellants, )
)
v. )          Case Nos. 2D16-341
)                    2D16-3599
ASSETS RECOVERY CENTER )          CONSOLIDATED
INVESTMENTS, LLC; 19-ASSET )
MANAGEMENT HOLDINGS, LLC; MIA )
FUNDING, LLC; 17-ASSET )
MANAGEMENT HOLDING, LLC; )
16-ASSET MANAGEMENT HOLDINGS, )
LLC; 14-TP FUNDING, LLC; 12 ASSET )
MANAGEMENT HOLDINGS, LLC; 11 )
ASSET MANAGEMENT HOLDINGS, LLC; )
10-ASSET MANAGEMENT HOLDINGS, )
LLC; 9-COMP LOAN, LLC; )
6-MISPROPERTIES, LLC; )
5-HOMECOM.LOANS, LLC; )
4-TRADERS TRUST, LLC; 21 ASSET )
MANAGEMENT HOLDINGS, LLC; )
3-STUDENT LOAN, LLC; 2 BANKING )
ONE FUNDING, LLC; 1, M, LLC, 1 M, )
INC.; JOHN OLSEN; and DANIEL )
COOSEMANS, )
)
Appellees. )
_____ )

Opinion filed February 23, 2018.

Appeals from the Circuit Court for
Sarasota County; Stephen L. Dakan,
Associate Senior Judge.

John S. Jaffer, Sarasota, and Steele T.
Williams of Steele T. Williams, P.A.,
Sarasota, for Appellants.

Mark A. Levy of Brinkley Morgan, Ft. Lauderdale, for Appellees.

ROTHSTEIN-YOUAKIM, Judge.

Defendants/Counterplaintiffs below, Asset Management Holdings, LLC, a/k/a AMH USA, LLC, and Thierry Cassagnol (collectively, AMH), appeal an amended final judgment awarding damages to Plaintiffs/Counterdefendants below, Assets Recovery Center Investments, LLC, and various other entities (the plaintiff entities), on the plaintiff entities' breach-of-contract claim and dismissing with prejudice all of the plaintiff entities' alternative claims for damages and AMH's counterclaims. We agree with AMH's argument that the trial court erred in denying its motion for an involuntary dismissal because the plaintiff entities failed to prove damages.[1] Accordingly, we reverse the amended final judgment to the extent that it awarded damages to the plaintiff entities, affirm the amended final judgment to the extent that it disposed of the plaintiff entities' alternative claims for damages and AMH's counterclaims, and remand for entry of an involuntary dismissal of the plaintiff entities' breach-of-contract claim.[2]

## Background

In 2003, the parties orally agreed that AMH would locate distressed mortgages that holders were typically willing to sell for less than face value, the plaintiff entities would provide the capital to finance the purchase of the distressed mortgages, and AMH would service the loans on behalf of the plaintiff entities. Specifically, they

---

[1]We reject AMH's other arguments without further comment.

[2]In doing so, we do not disturb the trial court's finding that the plaintiff entities own the disputed loans.

- 2 -

agreed that any money that AMH collected when servicing these loans would be applied as follows: first, AMH would reimburse itself for certain hard costs incurred while servicing and collecting the loans; second, the plaintiff entities would be reimbursed for the capital expended to acquire the loans; and third, once the plaintiff entities had been fully reimbursed as to a particular group of loans, the parties would split the remaining proceeds from that group evenly. With the foreclosure crisis looming, however, AMH became indebted to the plaintiff entities, and the parties' business relationship went awry. Consequently, in November 2008, the parties orally agreed that AMH would stop servicing the loans and would transfer all active loan files to the plaintiff entities and that the plaintiff entities would not seek to recover any money that AMH owed them (the walkaway agreement). About six months after AMH transferred the files to the plaintiff entities, however, AMH claimed that it had accidentally included in the transfer approximately 170 loans that were not originally part of the walkaway agreement, and it resumed servicing and collecting payments on these 170 loans (the disputed loans).

The plaintiff entities sued AMH for breach of the walkaway agreement.[3] The trial court bifurcated proceedings by holding a bench trial on all of the parties' substantive claims and counterclaims followed by a separate bench trial on damages. At the conclusion of the first bench trial, the court rejected AMH's assertions that the walkaway agreement was unenforceable and that it owned the disputed loans; found that the plaintiff entities owned the disputed loans and that, pursuant to the walkaway agreement, AMH owed the plaintiff entities any monies that it had collected on the

_____

[3]The plaintiff entities also raised alternative theories of recovery and ancillary claims not relevant to the issues we address on appeal.

disputed loans and was liable for any damages; reserved jurisdiction to determine the amount of damages, if any, due to the plaintiff entities; and dismissed with prejudice the plaintiff entities' remaining claims and AMH's counterclaims.

Before the damages trial, the plaintiff entities filed a written "memorandum regarding damage calculation" in which they requested damages in the amount of all monies that AMH had collected on the disputed loans after the parties had entered into the walkaway agreement. AMH responded, in pertinent part, that an award of damages in the amount of AMH's gross collections would fail to account for the costs that AMH had incurred in collecting and servicing the disputed loans and, as a remedy for breach of contract, would improperly put the plaintiff entities in a better position than they would have been if the walkaway agreement had not been breached.

At the damages hearing, the plaintiff entities relied on their memorandum and asserted that any costs that AMH had incurred in collecting and servicing loans covered by the walkaway agreement had been incurred through AMH's own wrongdoing. AMH responded that under a "breach of contract damage analysis, . . . the Plaintiff entities should not be put into a position better than they would have been, but for the breach" and asserted that the costs that AMH had incurred should be considered as "various setoffs to the overall gross number." AMH offered to establish an appropriate setoff by having Cassagnol testify, in pertinent part, to AMH's costs in servicing the disputed loans, and it noted that, in discovery, the plaintiff entities had acknowledged that fifty dollars per loan per month was a reasonable servicing fee. The plaintiff entities responded by reiterating that AMH should not be entitled to a setoff based on its wrongdoing.

- 4 -

The trial court agreed that AMH was not entitled to a setoff. The court noted that the first trial had addressed whether the walkaway agreement was valid and could be enforced, and it clarified its prior ruling that AMH had breached the walkaway agreement and that the disputed loans belonged to the plaintiff entities. Nonetheless, to preserve the issue for appeal, the court directed AMH to submit a written proffer of the setoff.

In addition to submitting this written proffer of their servicing costs, AMH moved for an involuntary dismissal. AMH reiterated its argument that awarding gross collections as damages would improperly put the plaintiff entities in a better position than they would have been had AMH not breached the walkaway agreement. AMH asserted that because the plaintiff entities had not introduced any evidence of the costs that they necessarily would have incurred in servicing the disputed loans, they had failed to satisfy their burden of proving damages under a lost-profits theory. The plaintiff entities responded that lost profits was not the correct measure of damages and that AMH could properly be denied a setoff based on its wrongful conduct. The plaintiff entities continued to rely solely on their original memorandum; they neither proffered nor requested an opportunity to proffer what costs they would have incurred in servicing the disputed loans absent the breach.

The trial court denied AMH's motion without explanation and, on the same day, entered an amended final judgment. The amended final judgment included the same findings and rulings as the original final judgment, including its finding that the plaintiff entities are the owners of the disputed loans, and awarded the plaintiff entities

all monies that AMH collected on the disputed loans after November 2008. AMH timely appealed.

## Analysis

Whether the trial court applied the correct measure of damages on a breach-of-contract claim is a question of law that this court reviews de novo. Del Monte Fresh Produce Co. v. Net Results, Inc., 77 So. 3d 667, 673 (Fla. 3d DCA 2011). If the trial court employed the correct measure of damages, we review the damages award for support by competent, substantial evidence. Id.

On appeal, AMH argues that the trial court erred in denying its motion for an involuntary dismissal because the plaintiff entities did not present sufficient evidence of damages under the correct measure. AMH contends that, to recover on their breach-of-contract claim, the plaintiff entities had to prove lost profits, which required evidence not only of AMH's gross collections but also of the costs the plaintiff entities necessarily would have incurred in servicing and collecting payments on the disputed loans if AMH had not done so in the breach. We agree.

At the damages part of the trial, the trial court stated that it had previously found that the plaintiff entities owned the disputed loans, contrary to AMH's claim to ownership; that the walkaway agreement was enforceable; and that AMH had breached it. Therefore, contrary to the plaintiff entities' suggestion, the court was apparently proceeding solely on the plaintiff entities' breach-of-contract claim; the court did not indicate that it had made or was relying on any other findings that implicated the plaintiff entities' other causes of action. See Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) ("The elements of an action for breach of contract are: (1) the existence

of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."). And, therefore, the plaintiff entities had to prove the third element of a breach-of-contract claim:  damages resulting from the breach.  See Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009) ("Under Florida law, damages are an essential element of an action for breach of contract." (citing Butland, 951 So. 2d at 876)).

The trial court's conclusion that AMH's wrongful conduct precluded a "setoff" misapprehends the purpose of a damages award on a breach-of-contract claim, which "is to restore an injured party to the same position that he would have been in had the other party not breached the contract."  Verandah Dev., LLC v. Gualtieri, 201 So. 3d 654, 659 (Fla. 2d DCA 2016) (quoting Lindon v. Dalton Hotel Corp., 49 So. 3d 299, 305 (Fla. 5th DCA 2010)).  In so concluding, the court incorrectly focused on punishing AMH for its breach rather than on putting the plaintiff entities in the same position that they would have been but for the breach.  See id.  As a result, the court incorrectly put the plaintiff entities in a better position than they would have been, see id. ("In restoring the injured party to the 'same position,' he 'is not entitled to be placed, because of that breach, in a position better than that which he would have occupied had the contract been performed.' " (quoting Lindon, 49 So. 3d at 305)), because if AMH had not resumed servicing and collecting the disputed loans, the plaintiff entities would have incurred costs by doing it themselves or by outsourcing it to a third party.

The burden of proving damages rested solely with the plaintiff entities. See Montage Grp., Ltd. v. Athle-Tech Comput. Sys., Inc., 889 So. 2d 180, 195 (Fla. 2d DCA 2004) ("The plaintiff bears the burden of proving an entitlement to lost profits.");

James Crystal Licenses, LLC v. Infinity Radio Inc., 43 So. 3d 68, 75, 80 (Fla. 4th DCA 2010) (reversing lost profits award and remanding for entry of defense judgment because plaintiff introduced evidence of only some fees it would have incurred but failed to deduct general overhead expenses); Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc., 619 So. 2d 6, 8 (Fla. 5th DCA 1993) (holding that plaintiff failed to carry burden of proving costs and expenses that it had to deduct from income when calculating lost profits); Physicians Reference Lab., Inc. v. Daniel Seckinger, M.D. & Assocs., P.A., 501 So. 2d 107, 109 n.1 (Fla. 3d DCA 1987) (rejecting nonbreaching party's argument that breaching party's failure to present evidence warranted affirmance of damages award because nonbreaching party bore burden of proving lost profits). Because they introduced no evidence of the costs they would have incurred in servicing and collecting the disputed loans, they failed to carry that burden, and the trial court should have granted AMH's motion for an involuntary dismissal. See Fla. R. Civ. P. 1.420(b); Allard v. Al-Nayem Int'l, Inc., 59 So. 3d 198, 201 (Fla. 2d DCA 2011) ("Involuntary dismissal is proper where there is inadequate proof at trial on the correct measure of damages."); St. Petersburg Hous. Auth. v. J.R. Dev., 706 So. 2d 1377, 1377 (Fla. 2d DCA 1998) (reversing order granting rehearing, entered after court had originally found that plaintiff failed to introduce sufficient damages of expenses to support lost profits, because "[t]his procedure improperly allows appellee a 'second bite at the apple' at proving damages, an element of proof that should have been proven at trial"); Teca, Inc. v. WM-TAB, Inc., 726 So. 2d 828, 830 (Fla. 4th DCA 1999) (reversing damage award, remanding for entry of defense judgment because plaintiff failed to prove expenses in support of claim of lost profits, and rejecting approach that would

- 8 -

have "allow[ed] a second bite at the apple when there has been no proof at trial concerning the correct measure of damages").

## Conclusion

The plaintiff entities failed to introduce evidence essential to their burden of proving lost profits on their breach-of-contract claim. In light of this failure, the trial court erred in denying AMH's motion for an involuntary dismissal. Accordingly, we reverse the amended final judgment only to the extent that it awarded damages to the plaintiff entities on their breach-of-contract claim; affirm the amended final judgment to the extent that it disposed of the plaintiff entities' alternative claims for damages and AMH's counterclaims; and remand for entry of an involuntary dismissal of the plaintiff entities' breach-of-contract claim.

Affirmed in part; reversed in part; remanded with directions.

LaROSE, C.J., and SLEET,[4] J., Concur.

---

[4]Judge Sleet has been substituted for Judge Wallace, who was on the original Asset Management Holdings panel.

- 9 -