DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

RICHARD BRITO and PAMELA GARCIA f/k/a JUANA
TEJADA,

Appellants,

v.

CITIZENS PROPERTY INSURANCE CORPORATION,

Appellee.

No. 2D2024-0664

_____

June 18, 2025

Appeal from the Circuit Court for Hillsborough County; Paul Huey,
Judge.

Barbara M. Hernando and Dean Makris of Makris & Mullinax, P.A.,
Tampa; and Aaron Kling of Kling Law, P.A., Tampa, for Appellants.

Evan A. Zuckerman of Vernis & Bowling of Broward, P.A., Hollywood;
and Andrew A. Labbe of Groelle & Salmon, P.A., Tampa, for Appellee.

KHOUZAM, Judge.

Insureds Richard Brito and Pamela Garcia timely appeal a final
judgment entered on a directed verdict in favor of Citizens Property
Insurance Corporation. Because the trial court abused its discretion in

setting the measure of damages and excluding the Insureds' damages evidence, which resulted in the directed verdict, we reverse and remand.

## BACKGROUND

The Policy

In 2020, the parties entered into an all-risks homeowner's policy. The policy expressly provides building coverage on a replacement-cost basis: "Covered property losses are settled . . . at replacement cost without deduction for depreciation, subject to" certain conditions.

Under the same section describing "Loss Settlement" for "[c]overed property," the policy obligates the Insurer to make an initial payment of at least the actual cash value of an insured loss, but permits it to withhold the rest of the replacement cost until the work is performed. Specifically, this payment-splitting provision provides: "We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred," subject to other conditions. This policy term tracks the requirements for replacement-cost policies set forth in section 627.7011(3)(a), Florida Statutes (2020) ("In the event of a loss for which a dwelling . . . is insured on the basis of replacement costs . . . the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred.").

The Claim and Ensuing Litigation

In 2021, the Insureds made a claim with the Insurer, alleging roof damage. After inspecting the property, the Insurer denied the claim on the basis that the loss was not covered under the all-risks policy.

2

Following the denial, the Insureds sued the Insurer for breach of contract. They alleged that the loss was covered and, consistent with the language of the policy and section 627.7011, expressly demanded "the full replacement cost for the property." The Insurer's answer and defenses maintained that the loss was not covered. The Insurer moved for summary judgment, which the court denied because a factual question remained "as to whether [the Insurer] is liable for the claim."

As the matter proceeded to trial, the Insureds disclosed their expert evidence, which included estimates of both the replacement cost value and actual cash value of the repairs. The Insurer then moved in limine to set the measure of damages at only the actual cash value of repairs, thereby excluding the Insureds' evidence of the replacement cost.

In support, the Insurer contended that despite the policy language providing coverage for the (higher) replacement cost, the proper measure of damages at trial was the (lower) actual cash value because the payment-splitting provision in the policy and section 627.7011 precluded any liability for replacement costs unless and until the work was performed. The Insurer also relied on *Vazquez v. Citizens Property Insurance Corp.*, 304 So. 3d 1280 (Fla. 3d DCA 2020), and the general proposition that the right of recovery is measured as of the time suit is filed, contending that the Insureds should have performed all the repairs before filing suit if they wanted to recover the replacement costs.

The court asked whether the Insurer's position was that the Insureds would have "to file another lawsuit" under the same policy after completing the pending trial here. According to the Insurer, "the proper process" was to (i) hold one trial on actual cash value now, then (ii) have the Insureds perform the repairs at their own expense, then (iii) have the Insureds submit another insurance claim for the difference between

3

actual cash value and replacement costs, and then, if the parties again disagreed, finally (iv) hold a second trial on replacement costs.

In response, the Insureds explained that the policy's plain language insured on the basis of replacement costs, not merely actual cash value of repairs. Thus, they were entitled to replacement costs at the time of the denial, regardless of when the repairs were performed.

The Insureds also cited to *Citizens Property Insurance Corp. v. Tio*, 304 So. 3d 1278, 1279-80 (Fla. 3d DCA), *review denied*, No. SC20-959, 2020 WL 7230480 (Fla. Dec. 8, 2020), which affirmed a judgment for the insured. It expressly rejected the "rather creative, though unavailing argument" that Citizens was permitted to pay only actual cash value of repairs after denying coverage under its replacement-cost policy. *Id.* at 1280. Further, in *Tio* the Third District distinguished its decision in *Vazquez*, saying that "[i]n *Vazquez*, Citizens did not deny coverage for a covered loss, as it did initially in the instant case." *Id.* at 1280 n.2.

Nonetheless, the trial court granted the Insurer's motion in limine. Stating "I don't get to rewrite contracts," the court ruled "that's what the contract is, the actual cash value," and excluded the Insureds' damages estimates, which included both actual cash value and replacement costs.

The matter proceeded to trial. Pursuant to the in limine ruling, the Insureds' proffered, but were not permitted to admit into evidence, their damages estimates. The Insurer thereafter moved for a directed verdict on the basis that the Insureds failed to establish their damages. The trial court agreed and granted the Insurer a directed verdict. The Insureds' motion for new trial was denied, and this appeal followed.

## ANALYSIS

After excluding the Insureds' evidence of their damages, the trial court granted a directed verdict for the Insurer on the basis that the

4

Insureds failed to admit sufficient evidence of their damages. Because the in limine ruling setting the measure of damages at actual cash value and excluding evidence of replacement costs was incorrect as a matter of law, we reverse the final judgment and remand for further proceedings.[1]

"Typically, a trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review." *Sottilaro v. Figueroa*, 86 So. 3d 505, 507 (Fla. 2d DCA 2012). "However, a court's discretion is limited by the evidence code and applicable case law. A court's erroneous interpretation of these authorities is subject to de novo review." *Id.* (quoting *Pantoja v. State*, 59 So. 3d 1092, 1095 (Fla. 2011)).

Likewise, "issues of contractual and statutory interpretation" are reviewed de novo. *Duffner Fam. 2012 Irrevocable Tr. v. Lee R. Duffner Revocable Living Tr.*, 394 So. 3d 236, 239 (Fla. 3d DCA 2024); *see also BellSouth Telecomms., Inc. v. Meeks*, 863 So. 2d 287, 289 (Fla. 2003) (reviewing de novo the proper measure of damages under a statute).

Here, there is no dispute that the policy provides coverage on a replacement-cost basis or that replacement cost is greater than actual cash value. There also is no dispute that the Insurer completely denied the Insureds' claim based on a lack of coverage and has continued to deny any coverage whatsoever throughout these proceedings.

Instead, the dispute concerns whether, after <u>denying</u> coverage, the Insurer's option to split payments on <u>covered</u> claims may be employed to exclude and limit the Insureds' damages evidence at a trial alleging the Insurer's wrongful denial of coverage. Under the plain language of the policy, the statute, and the case law, the answer is no.

---

[1] In light of our ruling on the evidentiary issue, we need not—and do not—address the other arguments on appeal.

To begin with, the plain language of both the policy and the statute make clear that the Insurer's option to initially pay only actual cash value and to withhold the rest of the replacement costs until the work is completed is limited to <u>covered</u> claims. In particular, the payment-splitting provision the Insurer relies upon appears under the "Loss Settlement" section of its policy, which expressly describes how "[c]overed property losses are settled." (Emphasis added.) The corresponding statute is to the same effect. *See* § 627.7011(3)(a) (addressing permissible timing of payments for "the <u>insured</u> loss" (emphasis added)).

Further, by discussing payments at all, these parts of the policy and statute necessarily contemplate at least <u>some</u> coverage. *See Coverage*, Black's Law Dictionary (12th ed. 2024) ("Inclusion of a risk under an insurance policy; the risks within the scope of an insurance policy. Coverage is often used interchangeably with insurance or protection."). In the absence of coverage, there would be no meaning to the language addressing the timing of payments for losses. *See, e.g., Bennett v. St. Vincent's Med. Ctr.*, 71 So. 3d 828, 838 (Fla. 2011) ("Courts should avoid readings that would render part of a statute meaningless." (quoting *Gomez v. Vill. of Pinecrest*, 41 So. 3d 180, 185 (Fla. 2010))).

But here, the Insurer has steadfastly maintained that the Insureds' loss is not covered. Throughout the proceedings below and in this court, the Insurer has consistently denied that any coverage exists for the Insureds' claim, and has refused to pay any part of it. Yet at trial, it was permitted to take advantage of policy and statutory language permitting it to split payments on covered claims as the work unfolds.

As the Insureds identified below, the Third District has explained the flaw in this reasoning. In particular, in *Tio* the court held that section 627.7011(3) "governs an insurer's post-loss obligations in

6

adjusting and settling claims covered by a replacement cost policy, and does not operate as a limitation on a policyholder's remedies for an insurer's breach of an insurance contract."  304 So. 3d at 1280.  It accordingly rejected the Insurer's position that "when an insurer wrongfully denies coverage of a claim—causing its insured to file suit against the insurer for breaching the insurance contract—section 627.7011(3) limits the breach of contract damages a jury may award, as if the insurer had not breached the insurance contract."  *Id.*

In so holding, the Third District also expressly distinguished its own decision in *Vazquez*, which the Insurer relies upon.  Saying *Tio* "presents a different situation" than *Vazquez*, the court emphasized that "[i]n *Vazquez*, Citizens did not deny coverage for a covered loss, as it did initially in the instant case," and that "[t]he parties' dispute in *Vazquez* concerned whether the costs associated with replacing undamaged floor tiles so that they would match the replaced damaged tiles constituted actual cash value under the policy."  *Id.* at 1280 n.2.  Because "Tio initiated her lawsuit after Citizens erroneously determined Tio's losses were not covered by the policy," the court concluded "therefore, section 627.7011(3) and the corresponding policy provision are not implicated in the instant case."  *Id.*  As the Insurer here denied coverage entirely, this case is analogous to *Tio* and likewise distinguishable from *Vazquez*.

Moreover, although our analysis is based squarely on the plain language of the policy and the statute, our reading also places the payment-splitting provisions in perfect alignment with the foundational proposition that disputes should be resolved in a single trial, rather than piecemeal.  *See, e.g., Mims v. Reid*, 98 So. 2d 498, 501 (Fla. 1957) ("The law presumes that a single cause of action can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one

7

action against the same party for the same cause.").  The Insurer's position—that the payment-splitting provisions authorize two trials for the Insureds' single breach of contract action because they filed suit before completing the repairs—is contrary to this settled principle.

Finally, we note that after the entry of judgment in this case, the Fourth District issued its opinion in *Universal Property & Casualty Insurance Co. v. Qureshi*, 396 So. 3d 564 (Fla. 4th DCA 2024).  The majority opinion there certifies conflict with *Tio* and concludes that section 627.7011(3)(a) and corresponding policy language prohibit an insured from introducing at trial evidence of work that has not been performed, even where coverage has been completely denied.  *Id.* at 566-68.  The dissent, however, would uphold the distinction between covered and uncovered claims set forth in *Tio* based on the plain language of the policy and the statute.  *Id.* at 568-69.  The dissent's discussion of *Tio* aligns with our view as set forth above.  Accordingly, because we agree with *Tio* and the corresponding discussion in the dissent in *Qureshi*, we certify conflict with the *Qureshi* majority.

Reversed and remanded for further proceedings; conflict certified.


KELLY, J., Concurs.
ATKINSON, J., Concurs specially with an opinion.


ATKINSON, Judge, Concurring specially.

I concur in the result and much of the reasoning of the majority opinion.  Like the majority, I appreciate and agree with the gist of Judge Warner's dissenting opinion in *Qureshi* and much of its reasoning but cannot unqualifiedly agree with it in its entirety.  For example, I do not

believe that the doctrine of prevention is squarely applicable to this situation. *See Universal Prop. & Cas. Ins. v. Qureshi*, 396 So. 3d 564, 570 (Fla. 4th DCA 2024) (Warner, J., dissenting) ("The doctrine of prevention states that where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, the promisor is not relieved of the obligation to perform and may not invoke the other party's nonperformance as a defense when sued upon the contract." (quoting *D & S Realty, Inc. v. Markel Ins.*, 816 N.W.2d 1, 13 (Neb. 2012))). As in *Qureshi*, in this case the insurer's denial of coverage made it eminently reasonable for the insureds to be hesitant to incur replacement costs that might not have been reimbursed absent an extension, or judicial adjudication, of insurance coverage— being, as they are, in the "no win situation" of "hav[ing] to incur the cost of repairs and replacements when there is no guarantee that a future breach of contract action by the insured will be successful" "in order to recover under the replacement cost coverage [they] purchased." *See id.* at 571 (quoting *D & S Realty, Inc.*, 816 N.W.2d at 14). However, I am not convinced it can reasonably be said that the insureds were prevented from making repairs to their home—or that they need to make such a showing or rely on the prevention doctrine in order to prevail. *Compare D & S Realty, Inc.*, 816 N.W.2d at 15–16 ("It is true that some courts have held that the insurer's good faith denial of liability excuses the insured from performing the repair/replace condition as a matter of law. But the greater weight of authority . . . is that whether interference by one party to a contract amounts to prevention so as to excuse performance by the other party is a question of fact[,] . . . [a]nd the burden to prove those facts is on the party bringing action under the contract." (footnotes omitted)), *with Citizens Prop. Ins. v. Tio,* 304 So. 3d 1278, 1280 (Fla. 3d

9

DCA 2020) (explaining that section 627.7011(3), Florida Statutes, and the corresponding policy provision "govern[] an insurer's post-loss obligations in adjusting and settling claims covered by a replacement cost policy[] and do[] not operate as a limitation on a policyholder's remedies for an insurer's breach of an insurance contract").

Granted, there are several ways in which a credible critique of the insurer's position could be formulated. I write separately to propose another way of conceptualizing the dispute in an effort to emphasize the illogic of the insurer's argument. I also address what I perceive to be the Fourth District's mischaracterization of the pertinent dispute in the opinion with which we declare conflict.

The damages inquiry in the trial of an action for an insurer's breach of contract based on a denial of coverage is, essentially, what the insurer *would have* been required to pay had it not denied coverage. *See Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Invs., LLC*, 238 So. 3d 908, 912 (Fla. 2d DCA 2018) ("[T]he purpose of a damages award on a breach-of-contract claim . . . 'is to restore an injured party to the same position that he would have been in had the other party not breached the contract.' " (quoting *Verandah Dev., LLC v. Gualtieri*, 201 So. 3d 654, 659 (Fla. 2d DCA 2016))). It defies logic to limit such an inquiry to actual cash value when the contract governing the action entitles the insured to "replacement cost without deduction for depreciation." When the Fourth District described the insured's entitlement to damages based on replacement cost as "[a]n expansion of insurance coverage . . . to include payment for estimated but not yet incurred repair costs [that] would improperly create insurance coverage by waiver or estoppel," it was off the mark. *See Qureshi*, 396 So. 3d at 568. That is not what is happening here. The coverage already exists. The insurance contract

10

provides for "replacement cost without deduction for depreciation" and obligates the insurer to "initially pay at least the actual cash value of the insured loss, less any applicable deductible," and then "pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred." The loss settlement section of the insurance contract is not a coverage limitation; as the majority explains, it just prescribes how and when the payment of covered losses is to be divvyed up. And to the extent the order of loss settlement described in the policy—requiring work to be performed and expenses to be incurred before the insurer's obligation to pay replacement costs arises—could be characterized as a condition precedent, it is not a condition precedent to an insured bringing a suit premised on a denial of coverage.

The legal proceedings necessitated by the insurer's alleged contract-breaching denial of coverage are designed to adjudicate not only whether the contract was breached but also the precipitate damages incurred by the insureds by way of an assessment of what position they should have been in had the breach not occurred. *See Asset Mgmt. Holdings, LLC*, 238 So. 3d at 912. That includes not only the actual cash value payment but also the additional payments to account for the replacement cost that the insurer would have been obligated to pay upon the making of repairs had it not allegedly breached the contract by denying coverage. In an action precipitated by a denial of coverage that allegedly breached the insurance contract, the fact that the insurance contract makes such replacement cost payments contingent on the costs having already been incurred does not foreclose adjudication of what those replacement costs *would be* had the insurer complied with the policy. Litigation is often both backward- and forward-looking. The damages inquiry in breach of contract actions inherently includes what

11

*might have* happened but for the breach. The inquiry in this litigation is what the insurer would have been obligated to pay under the insurance policy had it complied with the policy—and, as the majority opinion explains, under the language of the policy, those obligations manifestly include both the initial payment of the actual cash value as well as the subsequent payments to account for the replacement cost.

To the extent the insurer asserts that its obligation to pay the replacement cost is contingent on the insureds' obligation to first make repairs, the insurer hoists itself by its own petard. If we are being urged by the insurer to focus intently on the chronology prescribed by the policy, then perhaps we should expand that focus to include what the *insurer* is supposed to do *first*—acknowledge coverage and pay the actual cash value. As the majority notes, the specific policy provision at issue is subsumed within a section explaining how "[c]overed property losses are settled," so it presupposes that the insurer has acknowledged that the loss is covered by the policy. Had the insurer acknowledged coverage and made the initial payment of actual cash value in this case—and by its own logic, *only* if it had done so—then the insureds' obligation to first make repairs before demanding the replacement cost would have arisen. But that did not happen. The insurer's allegedly improper denial of coverage necessitated the insureds' lawsuit—which, as discussed, should include an adjudication of damages that includes *all* of what the insurer would have been obligated to pay under the contract should the insureds prevail in their claim that the insurer breached the contract by denying coverage. As such, I agree that the trial court erroneously limited the insureds' evidence in contravention of the insurance contract.

_____

Opinion subject to revision prior to official publication.